## ARGUED AND DETERMINED

### IN THE

# SUPREME JUDICIAL COURT

### OF

# MASSACHUSETTS.

---

CLARA M. ROTCH & others, executors, *vs.* WILLIAM A.
FRENCH.

WILLIAM BAYLIES & another, executors, *vs.* SAME.

Bristol.    January 11, 1900. — March 28, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER,
HAMMOND, & LORING, JJ.

*Guaranty not Running to Executor.*

A guaranty " of payment to R. of a dividend of 6 % per annum on stock subscribed
to this day in " a corporation named, does not run beyond the life of R., a rea-
sonable time having elapsed.

TWO ACTIONS OF CONTRACT, upon guaranties, one to William
J. Rotch and the other to A. H. Seabury, in similar form, of the
same date, and signed by William A. French, E. A. Potter, W.
Herbert Wilson, and H. C. French.    Writs dated June 29, 1896.
The guaranty to Rotch is given in the opinion.

At the trial in the Superior Court before *Fessenden*, J., the
defendant requested the judge to direct a verdict for him in each
case, contending that there was no evidence that the guaranties
were given for the consideration claimed by the plaintiffs; that

they did not cover more than one dividend which it was agreed had been paid, and that they did not run to the executors of Rotch who died in 1893, and of Seabury who died in 1887. The judge ruled otherwise and submitted to the jury the following question : " Was the consideration, if any, of the guaranty, an agreement on the part of the plaintiffs' testator to take and pay for one hundred shares in the capital stock of the French, Potter, & Wilson corporation? " The answer was " Yes." The judge directed the jury to return verdicts for the plaintiffs for the amounts due upon their respective guaranties; and, at the request of the parties, reported the cases for the determination of this court.    If the rulings were wrong, the verdicts were to be set aside and new trials granted ; otherwise, judgment was to be entered on the verdicts.    The facts appear in the opinion.

The cases were argued at the bar in January, 1900, and afterwards were submitted on briefs to all the justices.

*R. M. Morse,* (*L. Bass, Jr.* with him,) for the defendant.

*H. M. Knowlton,* (*F. H. Nash* with him,) for the plaintiffs.

HOLMES, C. J.    These are actions upon guaranties signed by the defendant and others in similar form as follows : " Chicago, Jan. 1, 1886.    We hereby guarantee the payment to Mr. William J. Rotch of a dividend of 6% per annum on stock subscribed to this day in the corporation of French, Potter & Wilson."    It appeared that Rotch and Seabury, the other person receiving a guaranty, respectively subscribed for one hundred shares in the corporation.    The plaintiffs contended and the jury found that the agreements to take these shares were the considerations for the guaranties.    The first question raised by the exceptions is whether there was any evidence to support these findings.    We shall assume for the purposes of decision that the evidence was sufficient.    The agreements suggest the consideration upon their face.    The defendant testified to an interview on December 28, 1885, in which Rotch and Seabury and another in the morning said that they would each take $10,000, and in the afternoon asked for a guaranty, to which the defendant replied that he and his associates would give it if the subscribers would give them all the money they wanted to make the business a success.    This, it appears from other conversation, meant, if they would take $50,000 instead of $30,000.

The answer, according to the defendant, was, " We will give you more money later." On January 10, 1886, the defendant met Rotch and the other subscribers, and gave them the certificates, receiving checks or notes in payment. At the same time they asked to have a guaranty sent them, and these guaranties were sent. On this evidence we assume that the jury were warranted in finding that, even if Rotch and Seabury at first promised unconditionally to take the stock, before the bargain was closed or any binding contract made they insisted upon having a guaranty, and that they accepted and paid for their certificates on the express stipulation that they should receive the guaranty which they did receive, and which of course was not a gift. It is true that the defendant and another testified that the real consideration was that Rotch and his fellow subscribers should give more money as it was needed, but that testimony was controverted and the jury had a right to reject it. The dividends were paid under the contract during the lives of Rotch and Seabury, although they made no further subscription or advance. It is not material whether the consideration was in strictness an agreement to subscribe or the subscription itself.

But the defendant contended and asked a ruling to the effect that the guaranties had run out, and upon this ground, in the opinion of a majority of the court, he must prevail. We assume without deciding that more than one dividend was guaranteed, but we are of opinion that the agreement does not purport to be a contract enduring as long as the shares represented by Rotch's and Seabury's certificates shall be in existence, or, in other words, during the whole life of the corporation.

The meaning of the words might vary according to circumstances, and the interpretation of them is a question for the instructed imagination, taking the facts just as they are. When a guaranty is asked for and given in the way in which this was, what is it reasonable to suppose that a normal business man means? No doubt if we consider mainly the object which Rotch and Seabury had in exacting the guaranty, (*Drummond* v. *Crane*, 159 Mass. 577, 579,) the same considerations which led them to want one logically would lead them to want one which should go to the character and value of the stock, one which should be of a duration equal to that of the stock, and which would be as use-

ful if they saw fit to sell as if they preferred to keep it. On the other hand, it is not likely that any of the parties looked forward to the defendant's establishing, or binding his estate to establish, an annuity or guaranty fund, to continue as long as the corporation lasted, and to await distribution until the corporation should be dissolved. Probably neither party thought the transaction out to its logical end, or put to himself definitely the question how long the guaranty was to last. Probably whatever result we come to would have raised some demur on the one side or the other if it had been stated at the time. We must decide, therefore, by drawing the line as we think most in accordance with the exact words used, and with what the parties would have been likely to agree upon if they had thought and talked about the matter.

This was not a guaranty offered to the public in the market, as an inducement to subscribe. It was not a guaranty indorsed upon a bond or certificate of stock, as in *Stillman* v. *Northrup*, 109 N. Y. 473. Rotch and Seabury had had previous dealings with the defendant and the other guarantors while the latter were doing business as partners and were selling agents for a corporation in which Rotch and Seabury were interested. Rotch and Seabury wanted the guarantors to form the corporation in which they afterwards took stock, and simply got this separate parol agreement thrown in, although not gratuitously, at the last minute, after they already had become desirous to see the enterprise started.

Under such circumstances it does not seem to us clear that the parties meant to bind themselves for more than a reasonable time, while the conditions remained substantially unchanged, if indeed they went further in their minds than their respective personal relations. See *Park* v. *Whitney*, 148 Mass. 278. The promise guarantees a payment " to Mr. William J. Rotch " personally, without mention of executors, administrators, or assigns. It guarantees no more in terms. A promise to pay a like sum annually to Rotch or Seabury would be limited to payments during their lives. However we might deal with similar words in a different case, we are of opinion that in the present one, after a reasonable time had elapsed, they had no further operation when Rotch and Seabury ceased to be stockholders by death.

We do not pretend to think that our conclusion is the only one possible. If it would be going too far in one direction to hold the guaranty absolute, or in the other to confine it to one year's dividends, either of which questions is debatable, there is still the doubt whether Rotch's and Seabury's executors, who represent the persons of their respective testators, are not entitled even now to stand in their testators' shoes. But we think that a line must be drawn somewhere, and that it falls most naturally where we have drawn it. It hardly needs to be added that the question of the scope of the promise is a question of construction not affected by the state of the law as to the right to assign the contract or to sue upon it when assigned in the assignee's own name.                    *Verdicts set aside.*