MARY QUINN *vs.* BOSTON ELEVATED RAILWAY COMPANY.
WILLIAM J. QUINN *vs.* SAME.

Middlesex.    March 11, 12, 1913. — April 1, 1913.

Present: RUGG, C. J., HAMMOND, LORING, SHELDON, & DE COURCY, JJ.

*Negligence,* Of parent, Street railway.

In an action by a child against a corporation operating a street railway for personal injuries from being struck by a car of the defendant when the plaintiff was upon the street unattended, it appeared that the plaintiff was two years and nine months of age, that the mother of the plaintiff had five other young children, two of them younger than the plaintiff, the youngest being three months old, and that she had no one to help her to take care of the children or to do the housework while her husband was at work, that she allowed the plaintiff to go out in the yard back of the house to play with her next older brother, who was four years and four months old, that the yard was surrounded by a fence and the only way to get out of it was by a gate, that the mother had tied the gate with a piece of clothes line so that it could not be opened without untying the rope, that while the plaintiff was in the yard the mother was attending to the babies and performing her household duties, that she did not look out of the window into the yard to see whether the children were there, that the plaintiff came in for a drink of water and then went out again into the yard, and that fifteen or twenty minutes later the plaintiff's mother heard of the accident. *Held,* that it could not be said as matter of law that the plaintiff's mother had failed to exercise the care which reasonably could be required of her, and that it was for the jury to say whether she had taken reasonable precautions to keep the plaintiff in the yard and in other respects had exercised reasonable care.

In an action by a child, two years and nine months old when injured, against a corporation operating a street railway for personal injuries from being struck by a car of the defendant, it appeared that just previous to the accident two or three children of about the plaintiff's age ran across the street ahead of the car, that the motorman reduced the speed of the car, and that he was putting on the power to start up again when the plaintiff ran across the street and was struck by the car. There was evidence that as soon as the motorman appreciated the impending danger of injury to the plaintiff he tried to stop the car, and he testified that he could have stopped the car within a distance of twelve or fifteen feet and actually did so; but there also was evidence that the motorman either saw or might have seen the plaintiff in a position of danger at a distance of thirty feet. *Held,* that it might have been found that, even if the motorman did not see the plaintiff in time to stop the car before it reached her, yet in the exercise of proper care he ought to have seen her in time, and, in that case, it could be found that the accident was due to his negligence, although, as soon as he did see the plaintiff and perceived the danger of running into her, he made every effort in his power to look out for her safety.

Two ACTIONS OF TORT, the first by an infant girl for personal injuries sustained on April 5, 1909, from being struck by a service car of the defendant on Prospect Street in Cambridge, and the second by the father of the plaintiff in the first case for loss and expenses incurred by reason of her injuries. Writs dated July 31, 1909.

In the Superior Court the cases were tried together before *Morton,* J. The jury took a view of the premises where the plaintiffs lived. It appeared that the accident happened at about four o'clock in the afternoon on Prospect Street between Summer Street and Gardner Street, and that the plaintiffs lived at a house on Summer Street, which was about one hundred and seventy-one feet west from the southerly corner of Prospect Street; that the plaintiff in the first case, hereinafter called the plaintiff, was two years and nine months old; and that at the time of the accident she was on the street unattended; that just previous to the accident two or three children of about the plaintiff's age ran across Prospect Street from Gardner Street diagonally toward Summer Street; that the motorman of the car, when he saw the children crossing the street, slowed down the car, and was in the act of putting on the power to start up again when the plaintiff, who had arrived at the westerly curb on Prospect Street, immediately turned back and ran across the street in the direction of Gardner Street, and was struck when between the rails of the westerly track by the forward part of the car, which was proceeding southerly on Prospect Street; that this service car was about forty-three feet long and was loaded with hard pine timber.

Mary M. Quinn, the mother of the plaintiff, testified that she had six children that ranged from seven years down, the youngest one being three months old; the next child, one and one half years old; Mary, the plaintiff, two years and nine months old; Edmund, four years and four months old; a girl between five and six years old, and a boy about seven years old; that only the two oldest attended school; that they lived downstairs at No. 12 Summer Street, a double house, on the easterly side, which was next to an alleyway, going in from Summer Street; that there was a yard in the rear of the house, used by the Quinns alone; that the plaintiff went out to play in the yard with her next older brother, Edmund, between three and half past three·

o'clock in the afternoon; that after she had been out in the yard about fifteen or twenty minutes she came in for a drink, and this was about fifteen minutes before the accident; that there was a fence around the yard, and a gate leading from the yard into the alleyway; that the condition of the fence and gate was all right on the day of the accident; that adjoining the alleyway was a picket fence about three feet high, and in the rear of the yard was a high board fence; that the hinges of the gate were away from the house and the gate when open would swing in back toward the yard; that there was no latch on the gate; that on the day in question the witness tied it with a rope and there was nothing to hold it except the rope; that she tied it with a piece of clothes line by looping it around the post on the side where the hinges were, swinging it over to the other post, and tied it around the post nearest the house; that the gate could not be opened while the rope was still tied; that she tied it around the fence post and the post of the gate; that Edmund, the plaintiff's brother, was the only one in the yard with the plaintiff; that the witness used to tie the gate for Edmund, but he got so that he could climb over it; that after the plaintiff came in to get the drink of water the witness was starting to prepare the evening meal; that there was an interval of about fifteen or twenty minutes between the time that the plaintiff came in to get a drink and the time the witness heard of the accident; that she did not recall what she was doing all the time the plaintiff was out in the yard besides going down to get some wood for the fire, but was attending to the babies; that when the plaintiff went out she told her to stay in the yard and play; that she recalled doing nothing else besides looking after the babies and going down after wood; that during all the time the plaintiff was out there she did not look out of the window into the yard to see whether the children were there; that she had no one to take care of the children and do housework except herself; and that there was no way that the plaintiff could get out except through the gate.

On cross-examination she testified that she knew there was a double line of tracks on Prospect Street; that cars ran there very frequently, and that it was a street upon which there was considerable travel by autos and teams; that she did not recall when she tied the gate that way before, because Edmund used to climb

over and she quit tying it; that she did not know where Edmund was when she let the plaintiff out into the yard again after she had the drink; that she did not see the plaintiff again for fifteen or twenty minutes, and did not observe, at the time the plaintiff went out into the yard the second time, whether the gate was open or not.

The father of the plaintiff, who was the plaintiff in the second case, testified that his wife had charge of the children while he was at work; that he was at work at the time of the accident, and when he came home he did not observe anything about the condition of the gate as far as the rope was concerned.

The evidence upon the question of the negligence of the defendant's motorman is described in the opinion.

At the close of the evidence the judge refused to order verdicts for the defendant, and submitted the cases to the jury, who returned a verdict for the plaintiff in the first case in the sum of $3,000 and a verdict for the plaintiff in the second case in the sum of $400. On motions of the defendant the judge set these verdicts aside as not warranted in law, and in accordance with an agreement of the parties reported the cases for determination by this court, with the stipulation that, if the orders setting aside the verdicts were right, judgment was to be entered for the defendant in each of the cases. If the orders were wrong, judgment was to be entered for the plaintiff in the first case in the sum of $3,000 and for the plaintiff in the second case in the sum of $400, with interest in each case from the date of the verdict.

*R. H. Sherman,* for the plaintiffs.

*F. J. Carney,* for the defendant.

SHELDON, J. There was evidence of due care on the part of the mother of the infant plaintiff. She had taken precautions to keep the child in a safe place, in the yard of the house. It was for the jury to say whether these precautions were sufficient. With the other duties which were incumbent upon her, and with what could be found to be the practical impossibility of keeping the child under her eyes, it cannot be said as matter of law that she failed to exercise any other care which reasonably could be required of her. The case does not resemble *Cotter* v. *Lynn & Boston Railroad,* 180 Mass. 145. It is more like such cases as *Hewitt* v. *Taunton Street Railway,* 167 Mass. 483; *Mellen* v. *Old Colony*

*Street Railway,* 184 Mass. 399; *Sullivan* v. *Boston Elevated Railway,* 192 Mass. 37; *Ingraham* v. *Boston & Northern Street Railway,* 207 Mass. 451; and *Dowd* v. *Tighe,* 209 Mass. 464. It is conceded that this child was too young to exercise care for herself, and that question need not be considered. *Grella* v. *Lewis Wharf Co.* 211 Mass. 54, 57.

It is a more difficult question whether there was any evidence of negligence in the operation of the defendant's car. As to this, it does not seem to us to be material under the circumstances whether the motorman did or did not ring his gong. If he did not do so, yet the child was not misled thereby. She saw the car. And there was evidence that as soon as the motorman realized the impending danger he tried to stop the car as soon as possible; and except from his own testimony we find no evidence of any lack of vigilance on his part. But there was evidence that he either saw or might have seen the child in a position of danger at a distance of thirty feet, and he testified not only that he could have stopped his car within a distance of twelve or fifteen feet, but that he actually did so. In the opinion of the majority of the court the jury were justified in finding, and we must now treat it as settled by their verdict, that even if he did not see her in time to stop his car and avoid the injury which resulted, yet he ought in the exercise of proper care to have done so. In that event, it could be found that the accident was due to his negligence, even though, as soon as he did see her and perceived the danger of running into her, he made every effort in his power to look out for her safety.

Judgment must be entered in each case for the plaintiff in accordance with the terms of the report.

*So ordered.*