ROBERT J. NOONAN, administrator, *vs.* KATE E. O'HEARN.

Suffolk.   November 12, 1913. — February 27, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & DE COURCY, JJ.

*Negligence,* Of parent, Of one controlling real estate.   *Landlord and Tenant.*

In an action against the owner of a tenement house for causing the death of the plaintiff's intestate, a child twenty-two months old, who was the son of the tenant of the tenement on the top floor, by reason of a defective floor and railing on the roof of the house, to which it was alleged that the intestate was invited by the defendant to go for recreation, there was evidence that the mother of the child put him to bed at half past one o'clock in the daytime, that about three o'clock she saw that he was sleeping and went on with her housework, and that later, while she was lying asleep on the same bed with the child, her seven year old daughter took the child up to the roof, where the accident happened at about half past four o'clock. *Held,* that, whether the mother of the intestate gave him all the oversight that reasonably could be required of her under the circumstances and therefore was in the exercise of due care, was a question for the jury.

In an action against the owner of a tenement house for causing the death of the plaintiff's intestate, a child twenty-two months old, who was the son of a tenant occupying one of the tenements, by reason of a defective floor and railing on the roof of the house, to which it was alleged that the plaintiff was invited by the defendant to go for recreation, it was conceded that the roof, which was called the "shed," was provided for the use of the tenants, and there was evidence that hooks for clotheslines were attached to posts there and that the place also was used for cleaning mats and doing "things of that kind," that for at least two years before the accident the shed was used by all the tenants as a place to sit during the summer time, that the accident happened at midsummer, that the defendant's agent, who had charge of the property, was on the premises about once a week and testified that he had been on the roof within three months before the accident, and it could have been found that he knew that the tenants openly and continuously made use of this place for outdoor rest and enjoyment, that the floor and side of the shed were in a defective and unsafe condition and not in so good a state of repair as when the tenement was hired by the child's father, and that the defendant's agent by the exercise of reasonable care could have discovered and remedied the defects before the time of the accident. It appeared that, as the child was walking on the roof, his foot went into a hole

in the flooring and that, the middle rail of the fence that surrounded the shed being gone, he fell over the lower rail and rolled off the roof. *Held,* that there was evidence that the plaintiff's intestate, whose rights were the same as those of his father, the tenant, was using the roof by the defendant's invitation and that the question of the defendant's negligence was for the jury.

TORT by the administrator of the estate of Henry R. Noonan for causing the death on June 24, 1911, of the plaintiff's intestate, twenty-two months old, who was alleged to have fallen from the roof of the defendant's tenement house numbered 35 on Chelsea Street in the part of Boston called Charlestown by reason of the alleged unsafe and dangerous condition of the premises, the intestate being a son of the plaintiff, who occupied as a tenant of the defendant the tenement on the fourth or top floor of the house. Writ dated November 11, 1911.

In the Superior Court the case was tried before *Stevens,* J., who at the close of the evidence, which is described in the opinion, ordered a verdict for the defendant. The plaintiff alleged exceptions.

*J. E. Crowley,* for the plaintiff.

*M. L. Fahey;* for the defendant.

DE COURCY, J. The plaintiff's intestate, Henry R. Noonan, a child twenty-two months old, was fatally injured on Saturday, June 24, 1911, by falling from the roof of a four-story tenement house that was owned by and in the control of the defendant. Covering this roof to within twenty inches of the edge was a platform constructed of boards laid upon three or four inch joists; and this flooring was surrounded by a three board fence, attached to upright posts, the boards being each about five inches wide and placed ten or twelve inches apart. The tenants had access to this structure, commonly called a shed, by means of the common stairways and hallways extending from the street floor. The plaintiff's family, of which the child, Henry R., was a member, occupied the tenement on the fourth or top floor.

While the child was walking on the roof platform, accompanied by his seven year old sister, according to her testimony his foot went into a hole in the flooring, he fell over the lower rail of the fence at a place where the middle rail was missing, and rolled off the roof. As the child was too young to be capable of exercising care, the due care involved in this case is that of the mother. It

could be found that she put the child to bed about half past one o'clock; that about three o'clock she saw that he was sleeping, and then she continued with her housework; that later, while she was lying asleep on the same bed, her seven year old daughter took the child up on the roof; and that the accident happened at about half past four o'clock. Whether the mother gave to her child Henry all the oversight that reasonably could be required of her under the circumstances disclosed by the evidence, and so was in the exercise of due care, was a question for the jury. *Sullivan* v. *Boston Elevated Railway,* 192 Mass. 37. *Quinn* v. *Boston Elevated Railway,* 214 Mass. 306.

If the child was a trespasser or a mere licensee on the roof shed, the defendant owed him no duty to keep the premises in safe condition, and would not be liable on the evidence disclosed. *Dalin* v. *Worcester Consolidated Street Railway,* 188 Mass. 344. *Hillman* v. *Boston Elevated Railway,* 207 Mass. 478. The plaintiff contends, however, that there was evidence in the case from which the jury could find that the defendant had invited the tenants and their families to use this shed as the child Henry was using it at the time of the accident. It is conceded that the so called shed was provided for the use of the tenants. Hooks for clotheslines were attached to the posts, and the place was used also for cleaning mats and doing "things of that kind." Further, there was evidence that for at least two years before the accident this shed was used by all the tenants as a place to sit during the summer time; that there were chairs up there; and that the plaintiff found one or more rocking chairs in this shed when he became a tenant. The defendant's agent, who had charge of the property, was on the premises about once a week, and testified that he had been on the roof within three months before the accident. The jury could find, notwithstanding his denial, that he knew that the tenants openly and continuously made use of this place for outdoor rest and enjoyment.

If the only inference to be drawn from these facts is that the landlord merely acquiesced in such use of the roof shed by the tenants, their rights when so using it would be those of licensees only. But the facts are also susceptible of the inference that the tenants used this shed as a breathing place by the express or implied inducement or wish of the defendant; in other words,

by her invitation. It is said to be not unusual for landlords to make provision for such use of the roof space in congested tenement house districts to-day. Although the evidence of invitation was meagre, and the case is a close one, we cannot say as matter of law that there was not enough to entitle the plaintiff to have it considered by the jury. In the first instance, at least, it was for them to decide, as a question of fact, whether the child, in properly walking on the platform, was using the shed for a purpose for which the landlord intended it to be used. *Grella* v. *Lewis Wharf Co.* 211 Mass. 54.

The rights of the child were the same as those of his father, the tenant, under the same circumstances. *Domenicis* v. *Fleisher,* 195 Mass. 281. If the child was in the shed by invitation of the defendant, there was evidence from which there could be found an actionable breach of duty on her part. It tended to show that the flooring and side of the shed were in a defective and unsafe condition; that they were not in so good a state of repair as they appeared to be in when the tenement was hired by the plaintiff; and that the defendant's agent by the exercise of reasonable care would have discovered and remedied the defects before the time of the accident. *Andrews* v. *Williamson,* 193 Mass. 92. *Callahan* v. *Dickson,* 210 Mass. 510. *Grella* v. *Lewis Wharf Co.* 211 Mass. 54. *Green* v. *Pearlstein,* 213 Mass. 360.

*Exceptions sustained.*