MARY T. FITZSIMMONS *vs.* HARRIET C. HALE.
JOHN H. FITZSIMMONS *vs.* SAME.

Suffolk.   October 6, 7, 1914. — March 4, 1915.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Negligence,* Invitation, In maintaining common stairway.

In an action, against the person in control of a building and of its common stairways which were used by his tenants occupying different portions of the building, for personal injuries caused by a defect in a back stairway which the plaintiff was descending, after having made some purchases at a meat market on the street floor of the building, when she was returning the same way she came by going down the back stairs to the ground that formed the floor of the basement of the building, where the only questions in dispute were whether the plaintiff had been invited to use the rear entrance instead of that from the street in going to and returning from the market as a customer and whether the proprietor of the market had authority from the defendant to give such an invitation, there was evidence that the proprietor of the market was a tenant at will of the defendant and paid rent from month to month, that in the spring preceding the month of July in which the accident happened this tenant with the knowledge of the defendant had put a canvas sign bearing his

name and the words "provisions and groceries" on the building near the rear entrance, although this sign afterwards was blown down and was not replaced, that from the beginning of his tenancy to the time of the accident a number of his customers went to and came from his market on every week day by means of the rear entrance, that the defendant's agent, who collected the rent monthly, "was on the premises frequently and could see what was going on," and that the rear entrance was over a common stairway in the control of the defendant which was maintained by him for the use of all his tenants. *Held*, that a jury could have found that the plaintiff at the time she was injured was using the stairway by invitation, that the defendant knew of the use which his tenant's customers were making of the rear entrance from the time the tenancy began, and that such use was contemplated by the defendant under the original letting, so that the defendant could be held liable to the plaintiff for any neglect of proper precautions to keep the stairway in as good condition as it was in, or had appeared to be in, at the time of the letting.

CROSBY, J. These were two actions of tort. The first is brought to recover for personal injuries received by the plaintiff, and the second, brought by the husband of the first plaintiff, is to recover for amounts expended by him for medical attendance, medicines, and the nursing of his wife. Where the plaintiff is referred to it is to be understood as applying to the female plaintiff.

It is admitted by the defendant that she was "in control of the building numbered 193 A Massachusetts Avenue" in Boston; that she "leased out certain numbers of said building numbered as aforesaid, and reserved to herself the care and control of the common hallways in said building and the steps or stairs leading thereto; that there was evidence of the due care of the plaintiff, Mary T. Fitzsimmons, and of the defendant's negligence, as to persons rightfully on the stairs or steps, in permitting the stairs or steps upon which the plaintiff was injured to remain in a defective condition; and that the plaintiff, Mary T. Fitzsimmons, was injured."

This stairway led up from the ground which formed the floor of the basement of the building to the rear entrance of a meat market of one Magee, who was a tenant of the defendant, and to the floors above. The main entrance to this market was on Massachusetts Avenue at the level of the sidewalk of that street. The plaintiff, who was employed in a laundry in the building adjoining that of the defendant, left the laundry by the rear door, crossed the area behind these buildings, and ascended the common stairway at the rear of the meat market. After making some purchases in the market, she came out, and while descending the

stairs was injured by the breaking of one of the steps. The tenant Magee occupied his market as a tenant at will, and paid rent from month to month.

There was evidence to show that in the spring of 1910 the tenant Magee put up a canvas sign on the building, near the rear entrance of his store; that it was there with the knowledge of the defendant, and afterwards was blown down. It does not appear how long the sign was up, or that the plaintiff ever saw it or knew of its existence. Still, if the sign was maintained at the rear entrance of the meat market, that was evidence having some tendency to show an invitation on the part of the tenant to the public to enter and leave the market by means of the rear entrance. The weight of this evidence was for the jury. *Fogarty* v. *Bogart*, 43 App. D. (N. Y.) 430; 60 N. Y. Supp. 81. We do not mean to intimate that the maintenance of a sign upon a building is always evidence of an invitation to enter the building. It is common knowledge that signs frequently are placed upon buildings solely for advertising purposes, under such circumstances as to be apparent that no invitation to enter the premises in a particular way could be inferred.

There was further evidence to show that from the beginning of Magee's tenancy to the date of the accident, which occurred in July, 1910, several persons went to and came from the market daily (except on Sundays) by means of the rear entrance; and that such persons, including both men and women, made purchases in the market.

The plaintiff testified that she had "seen for the last four or five years, ladies and gentlemen going in and out making purchases, going in the rear way and coming out the rear way;" that some days she had seen six or seven, some days three or four, and some days two, and some days nine or ten. She further testified: "I thought I could use the same advantage what they did, . . . I did it for short."

There was evidence from one Hannah Scannell that she had seen customers go in and out of Magee's store by this rear entrance for the past seven years.

Magee, the tenant, testified that there was no "special agreement with Mrs. Hale, the defendant, or her agent" as to the use of the two doors (front and rear); "nothing was said about it;"

and that "at no time since I have been there has there been any restriction of people coming in the rear way if they chose to," and "a very small percentage came in the back way; that percentage was more or less regular; it had continued since I had been there."

Magee also testified on his direct examination that "I never solicited patronage in that way," meaning by the rear door; but on re-direct examination he testified not only that he never refused to wait on anybody because they came in by the rear door, but "I had a sign there, I think it was in the spring of 1910; it was a canvas sign; it was a light affair and it finally blew down; the reading of the sign was my name and 'provisions and groceries.'"

Putting up this sign and evidence that customers had been coming in and out of the rear door daily from the beginning of his tenancy, would have warranted a finding that there was an invitation on the part of Magee to his customers to use the rear door in coming to trade at his meat market.

The next question presented is: Did the tenant have the right as against the landlord to invite customers to use the rear door and the common stairway which was reserved for the use of the different tenants? As was pointed out by Loring, J., in *Domenicis* v. *Fleisher*, 195 Mass. 281, 283: "There are a number of cases in this Commonwealth in which a member of the tenant's family has been allowed to recover for a negligent act of the landlord. *Looney* v. *McLean*, 129 Mass. 33. *Shute* v. *Bills*, 191 Mass. 433. *Andrews* v. *Williamson*, 193 Mass. 92. . . . There are also cases where one who has come on the leased premises on business with the tenant has been held to be entitled to recover for negligence on the part of the landlord under circumstances under which the tenant would have been entitled to recover. *Wilcox* v. *Zane*, 167 Mass. 302. *O'Malley* v. *Twenty-Five Associates*, 170 Mass. 471. *Roche* v. *Sawyer*, 176 Mass. 1. *Jordan* v. *Sullivan*, 181 Mass. 348."

There was nothing in the terms of the contract creating the tenancy at will, under which Magee was in occupation, defining the class of persons to whom Magee, as against the landlord, had a right to extend an invitation to use these steps and the rear door in coming to his market to trade. Under these circumstances the conduct of the landlord (the defendant) and of Magee (the tenant) may be resorted to to determine what was within their

contemplation under the original contract of lease. If the landlord knew of the use made of the rear door by Magee and his customers and did not object to it, in the opinion of a majority of the court that would be conduct on her part which could be resorted to to determine the class of persons to whom as against the landlord Magee had a right to extend an invitation to use the rear door under the original contract of letting.

The tenant Magee testified that "the sign was there since the Hale people had charge of the building and was there with their knowledge." He also testified: "I don't know whether the agent or proprietor of the building knew the method in which I conducted my business; the rent was collected on the premises; the agent was on the premises frequently and could see what was going on." It also appeared that the tenant had no lease; that he paid the rent from month to month, and was a tenant at will. From the frequency of the use testified to by the plaintiff and Hannah Scannell, the jury could have found that an agent (who collected the rent on the premises monthly and who was on the premises frequently) knew the custom. In this connection it is to be borne in mind that this rear entrance was over steps and stairs in the control of and maintained by the defendant as a common stairway for the use of all her tenants; and the defendant or her agent was obliged at all times to see that these stairs or steps were kept in as good repair as they were in, or appeared to be in, at the time Magee's tenancy began, which means such condition as they would appear to be in to a person of ordinary observation. *Andrews* v. *Williamson*, 193 Mass. 92. In view of the evidence considered in the light of this continuing obligation upon the defendant, a majority of the court are of opinion that the jury could have found that the defendant knew of the use which the tenant's customers were making of the rear entrance from the time the tenancy began.

It is not pretended that the defendant or her agent ever objected to the use made by Magee and his customers of the rear door.

It follows (in the opinion of a majority of the court) that the jury could have found from the conduct of the parties that the use of the rear door by Magee's customers was contemplated by the landlord under the original letting.

If the jury found that the use actually made of the rear stairway by customers of the tenant was contemplated and intended

by the defendant when the tenancy began, she is liable for any neglect of proper precautions to keep it in as good a condition as it was in, or appeared to be in, at the time of the letting, for persons rightfully using it, aside from the question whether Magee is liable or not. *Domenicis* v. *Fleisher*, 195 Mass. 213. *Noonan* v. *O'Hearn*, 216 Mass. 583. *Morong* v. *Spofford*, 218 Mass. 50. This case is to be distinguished from *Bowler* v. *Pacific Mills*, 200 Mass. 364; *Norris* v. *Hugh Nawn Contracting Co.* 206 Mass. 58; and *Hillman* v. *Boston Elevated Railway*, 207 Mass. 478.

A majority of the court are of opinion that the exceptions should be sustained and judgment entered in accordance with the agreement of the parties.\* Accordingly judgment is to be entered for the plaintiff in the first case for $350, and for the plaintiff in the second case for $1, without costs in either case.

*So ordered.*

The cases were argued at the bar in October, 1914, before *Rugg*, C. J., *Loring, Sheldon, De Courcy,* & *Crosby*, JJ., and afterwards was submitted on briefs to all the justices then constituting the court.

*John Wentworth,* (*J. P. Magenis* with him,) for the plaintiff.
*C. S. Knowles*, for the defendant.

---

\* The cases were tried together before *Raymond*, J., who at the close of the plaintiff's evidence ordered verdicts for the defendant. The plaintiffs alleged exceptions, containing an agreement of the parties, above referred to, that, if the exceptions were sustained, judgment might be entered for the plaintiff in the first case in the sum of $350 and for the plaintiff in the second case in the sum of $1, in each case without costs.