HENRY J. BODEN *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.     March 2, 1910. — May 17, 1910.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Negligence*, Elevated railway, Invited person, Licensee, Trespasser.

Where a corporation, which operates both an elevated railway and street railway lines, maintains a station at which cars and trains of both lines discharge and receive passengers and has provided for passengers therein a safe way of exit from its elevated trains to surface cars, it is the duty of such a passenger to use the way provided, and if, knowingly and without any invitation express or fairly to be implied from the situation and arrangement of the station and platforms, he leaves the way marked out by the carrier and proceeds to pass to a surface car by some other platform, he ceases to be a passenger and becomes a trespasser or at most a mere licensee. It makes no difference that he uses a platform where other passengers before him have gone unless there is an invitation express or implied on the part of the carrier. Following *Legge* v. *New York, New Haven, & Hartford Railroad*, 197 Mass. 88.

An elevated railway company in Boston, which also operated a number of street car lines upon the surface of the streets, maintained a station at which passengers leaving an elevated train could pass across a well lighted platform and down a few steps to another well lighted platform two hundred and five feet long and twenty-one feet wide, which was covered and ran parallel to a track

where surface cars discharged and received passengers.  Surface cars approached this platform by passing first up an incline and around a large curve like a horseshoe.  From the end of this covered platform which was adjacent to the part of the track where the track ceased to curve and came alongside of it, a narrow platform, uncovered and constructed of varying width along the curve of the track and of boards with spaces between them, was built for thè use of employees of the company.  It was not lighted in the evening.  At a point ninety-five feet from the covered platform there was a rise of about six inches and the platform was narrowed about two feet, leaving an opening where the floor of the wider portion ceased.  A passenger on an elevated train at half past ten o'clock at night passed down to the covered platform and, seeing a car which he desired to take approaching and being fearful lest, if he waited to take the car at the usual place, he would not be able to get a seat because of the number of passengers, walked out upon the narrow, unlighted, uncovered platform to a place with which he was not familiar, stepped off at the opening ninety-five feet from the passenger platform, and received injuries, to recover for which he brought an action against the elevated railway company.  At the trial of the action there was evidence tending to show, besides the foregoing facts, that other persons had gone out upon the narrow platform to meet cars for the same reason that the plaintiff had.  *Held,* that the plaintiff had not been invited to use the platform where he was when he was injured, that he had no right there as a passenger, but was at most a mere licensee, and that the only duty which the defendant owed to him was to refrain from wanton or reckless conduct that would put him in peril, which duty the defendant had not violated ; and, *also,* that there was no evidence that the plaintiff was in the exercise of due care.

TORT for personal injuries alleged to have been received by the plaintiff on December 25, 1905, at the Dudley Street station of the defendant in Boston when with a view to getting upon a surface car before it reached the platform built for the use of passengers entering and leaving such cars, he was passing along a platform built for use of employees of the defendant. Writ dated September 7, 1906.

The case was tried before *Brown,* J.  At the close of the evidence, the presiding judge ordered a verdict for the defendant ; and the plaintiff alleged exceptions.

*W. P. Thompson,* for the plaintiff.

*E. P. Saltonstall,* (*S. H. E. Freund* with him,) for the defendant.

KNOWLTON, C. J.  The plaintiff took a train on the defendant's elevated railway to the Dudley Street terminal station. There he undertook to pass by transfer to a surface car of the defendant which came into the same station.  From the platform on which passengers alight from the cars on the elevated railway, there were three steps down to a covered platform from

which passengers take cars running out on some of the defendant's surface roads. This platform was two hundred and five feet long and twenty-one feet wide, and the cars from the surface roads came up a gradual ascent from the street below, and passed around a curve like that of a horseshoe, and the track extended along by the side of this platform throughout nearly its whole length. The platform was well lighted and conveniently constructed for the use of passengers, and all the surface cars stopped by the side of it to discharge and receive passengers. Extending off from this platform, adjacent to the upper part of the curve in the track for the surface cars, there was another narrow platform for the use of employees, constructed with the boards in the floor laid apart from each other, with spaces of about an inch between them, which platform was not covered, nor lighted in the evening. Its width varied greatly, as it was built around the outer edge of the curved track. At a point ninety-five feet from the side of the covered platform there was a rise of about six inches, and the platform was narrowed about two feet, leaving an opening where the floor of the wider portion ended.

The accident happened at about half past ten o'clock in the evening. The plaintiff left the elevated train, passed across the platform and down three steps to the covered platform. He wished to take a car for Mattapan. He knew the car would come around the curve and stop opposite the covered platform to receive passengers. Because he thought the number of passengers taking the car would be so large that he would not get a seat if he got upon the car in the ordinary way, he left the covered platform, and walked out into the darkness along the other platform a distance of ninety-five feet, and stepped off into the opening at the place where the platform was narrowed. The car for Mattapan which he had started to take was about fifty feet further on, around the curve. The night was dark, and the plaintiff testified that when he left the covered platform he walked "out into utter darkness." He testified that he used this station "two or three times a day, back and forth," although some days he did not "go at all." He also testified that he was not familiar with the platform near where he fell, and that he was not looking where he was stepping.

The construction of the station, with its long and wide covered platform where the surface cars discharged and received passengers, and with the platform of a different kind, uncovered and having spaces between the boards of the floor, and leading out at right angles from the covered platform into utter darkness in the evening, with cars coming up and passing around before they reached the platform designed for passengers, showed plainly that passengers were not expected to go out around the curve to meet cars coming in. There was no evidence of an invitation to passengers, express or implied, to go there. There was nothing to indicate that the platform around the curve was intended to be used by passengers leaving the cars or by passengers taking the cars. There was no evidence that any passenger ever left a car there. There was testimony that other persons, like the plaintiff, had sometimes gone out upon this platform to meet cars, with a view to increase the probability of their getting a seat, when there was a large number waiting to take the cars on the covered platform. But this was contrary to the plain indications of the purpose of the railway company. They went there, not in the exercise of their rights as passengers, but as trespassers, or at best as mere licensees.

The principle stated in *Legge* v. *New York, New Haven, & Hartford Railroad,* 197 Mass. 88, 90, is applicable to a passenger who knowingly disregards the provisions made for his convenience and safety, and chooses a course with which he is not familiar, and which he knows was not intended for his use. In that case, the court, in speaking of the duty of a passenger to use the proper arrangements made for his exit, said: " If he knowingly fails to do so, and without any invitation either express or fairly to be implied from the situation and arrangement of the station and grounds, leaves the way marked out by the defendant and proceeds to make his exit in some other way, he ceases from that moment to be a passenger and becomes a trespasser, or at the most a mere licensee. He has stepped from the aegis by which, up to that moment, the law as to passengers covered him. Nor does it make any difference that he goes where others, with the knowledge of the railroad company, have gone before him, unless there is some invitation express or implied upon the part

of the company. Knowledge of such use where proper arrangements have been otherwise provided does not of itself amount to such invitation." See also *Lowery* v. *Walker*, [1910] 1 K. B. 173. Then follows a citation of cases. The defendant was under no obligation to provide a place for passengers where the accident happened, as if they were invited to use the horseshoe platform there. Its only duty was to refrain from wanton or reckless conduct that would put them in peril.

In going where he did and as he did, the plaintiff, upon his own testimony, was not in the exercise of due care. He started to take a car which was about one hundred and fifty feet away from the lighted platform intended for passengers, and he did this on a dark night, passing over a course which was not lighted and with which he was not familiar. He did not look to see where he was stepping. He did this knowing that he was not regarding the plans and arrangements made by the defendant for the accommodation of its passengers. He did it with no other purpose than to relieve himself from the inconvenience attendant upon the presence of a large number of other passengers. He knew the principal facts which created the risks attendant upon his conduct, and these were such as should have induced him to refrain from the exposure to danger which he voluntarily accepted. We are of opinion that there was no evidence that he was in the exercise of due care.

*Exceptions overruled.*