MARY J. HILLMAN *vs.* BOSTON ELEVATED RAILWAY COMPANY.

JOHN J. HILLMAN *vs.* SAME.

Middlesex.     November 11, 1910. — January 6, 1911.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Negligence,* Invitation, Licensee.     *Elevated Railway.*

A corporation, which operates an elevated railway and maintains an elevated terminal and transfer station, in the centre of which is a single track for its elevated trains constructed in a pit four feet below the surface of the station platform, and which also maintains a subway, crossing under this pit, by which passengers may pass from one side of the station to the other in order to take surface cars which are run from the ground to the level of the station platform on inclined tracks leading to the outward sides of the platform, does not invite passengers to cross from one side of the station platform to the other by using as bridges the platforms of the cars of an elevated train, which is standing in the pit with its gates open for the purpose of admitting passengers, merely because it does not forbid persons from crossing in this way when its servants see them doing it and tolerates such a practice without taking any active steps to prevent it.

TWO ACTIONS OF TORT, the first by a married woman for personal injuries received by her on June 24, 1902, at a terminal station of the defendant at Sullivan Square in that part of Boston called Charlestown, alleged to have been caused by negligence of the defendant's servants in closing a gate attached to one of the cars on the elevated railway of the defendant upon the skirt of the plaintiff's dress, so that she could not release herself and was dragged along the platform of the station when the train started, and the second action by the husband of the plaintiff in the first case for loss of her society and for expenses

incurred in consequence of her injuries.   Writs dated May 14, 1903.

In the Superior Court the cases were tried together before *Hitchcock*, J.   The plaintiff in the first case was injured in passing from the platform on one side of the station to that on the other side by crossing the platform of a car of an elevated train of the defendant, which was standing between the two platforms for the purpose of discharging and receiving passengers, as described in the opinion.

At the close of the evidence the plaintiffs asked the judge for eleven instructions to the jury.   The judge refused to give any of these instructions, and, among other instructions, gave the following:

"Now, with reference to the station at Sullivan Square; if West Somerville cars come in on one side of the elevated track, — which the evidence indicates was considerably depressed below the level of the platform, — and the Malden cars on the other side, and it is necessary, in order to go from West Somerville cars to the Malden cars, to take advantage of the transfer which the company gives, — if it becomes necessary to cross the tracks of the elevated railroad, it will be the duty of the defendant to provide a safe, suitable, and convenient way for getting across those tracks.   Now, there is one of the issues in this case. The evidence seems to show that they did provide a way by which persons could go across.   There does not seem to be or appear to be any dispute about the fact that what has been spoken of as a 'subway' was provided, and which was reached by steps on one side and steps on the other, and also that there was a system of transfer checks, and there were certain signs up. If the defendant company provides a safe and convenient way of getting across the tracks, — provides a system by which passengers can be transferred with safety to themselves, the defendant company has done all that is required of it to do so far as its duty is concerned towards the safety and convenience of its passengers; and if the plaintiff, knowing that such a way has been provided, — having full knowledge of it, — sees fit not to avail herself of that way that is provided, but did adopt some other way, which may be dangerous, the plaintiff would be considered as having taken her chances in adopting that dangerous

way. I say, if the plaintiff knew that a way had been provided, and that the regular way that was provided would be to go down through this subway, and, instead of doing that, she saw fit to takes chances in getting across by some other way, the plaintiff has no cause to complain if an accident happens in consequence thereof.

" But the plaintiff comes in at this point and says that not only does she know, — and I understand her to testify that she did know that there was that way of getting across, — not only did she know that fact, but also that it was a common practice for people to go across the platform, and, sometimes, through the cars of an elevated train which might be standing in the station, and that was done so frequently and so generally that it must be considered as amounting to an invitation on the part of the defendant company to go across those cars, — to use those cars as a bridge, for instance, — that expression has been used frequently, — that it was an invitation on the part of the defendant to use those cars for a bridge to cross the tracks. Now, I cannot tell you that that amounts to an invitation. In fact, I must say to you that it does not amount to an invitation from any evidence that has appeared in this case. But it may be, that, knowing that people used it, it may well be supposed, and may well be argued as it has been, that the evidence might be such that you might find from that that there was an implied consent on the part of the defendant company; that is, they, knowing that these cars were used in that way, making no effort to stop it, making no protest by way of signs or anything of that nature, — that you may well find that there was a license to people to go across there. That is the position in which, it seems to the court, this plaintiff must stand; that is, in attempting to use the front platform of the car as a bridge to go across from one platform to the other, knowing that there was a way provided for crossing, knowing that there was a system of transfers, and using this for her own convenience, as she testified, she must be considered at the most at that time as being a mere licensee. . . . But when a person goes across like that, — as a licensee, — another rule of law arises, and that is that the defendant would owe a licensee no duty except to refrain from wilfully or recklessly or wantonly injuring the person. . . .

" In this connection, I adopt and give to you as a part of the instructions, a request that is made by the defendant, as follows: If the plaintiff Mary J. Hillman used the train as a bridge for her own convenience to cross from one platform to the other, and without intending to take a passage on the train, she cannot recover unless the servants or agents of the defendant wilfully or wantonly injured her."

The plaintiffs excepted to that part of the charge in which the judge stated that the plaintiff Mrs. Hillman was a licensee, and that the only duty which the defendant owed her was to refrain from wilfully or wantonly injuring her. The cases then were submitted to the jury, who returned a verdict for the defendant; and the plaintiffs alleged exceptions.

*W. W. Stover,* for the plaintiffs.

*W. Shuebruk,* for the defendant.

LORING, J. The only question in this case is whether the evidence warranted the jury in finding that the plaintiff in the first action was invited by the defendant to go from one to the other platform in its Sullivan Square station by crossing over an elevated train which was standing between the two platforms to discharge and receive passengers.

Sullivan Square station is primarily a transfer station. Through the centre of it runs the single track of the defendant's elevated railway. This track runs north and south and is in a pit about four feet below the station platforms. The station platforms are on a level with the platforms of the cars of the elevated trains. Surface cars from and to Somerville and beyond run up an incline on to five tracks with dead ends which are reached from the platform on the west of the pit through which the elevated trains run. Similarly surface cars from and to Everett and Malden run up an incline on to five tracks on the east side of the pit. Passengers who have taken a surface car at Somerville for a point reached by a surface car running to Everett or Malden have to pass from the west to the east platform which (as we have said) are separated by this pit four feet deep, extending the whole length of the platforms. A subway had been constructed by the defendant for this purpose at the south end of the station, which led down under the pit and up to the platform on the other side. There was a turnstile and ticket office

at each entrance to the subway, and a ticket was given to each passenger on his entering it. There was a sign on the west platform (the platform on which the plaintiffs disembarked) near the entrance to the subway, on which was printed in large letters, " Subway to East Platform," with an " index hand " pointing to it; and on the ticket office at the entrance another sign, in smaller letters, on which was printed " Transfer to Surface Cars and East Platform."

On the morning in question the plaintiff in the first action and her husband (the plaintiff in the second action) left their home in West Somerville to visit their son who lived in Malden. The plaintiff was a woman sixty-eight years of age and her husband (as she testified) was aged, feeble and just recovering from a paralytic shock. When the plaintiff and her husband disembarked at the Sullivan Square station there was an elevated train standing between the two platforms, with the gates on its car platforms open. The plaintiff assisted and guided her husband on to the platform of one of the cars of this train and was about to follow him when another woman crowded in between them. The husband reached the east platform in safety, but as the plaintiff was stepping from the car platform to the east platform of the station the starting gong sounded and the brakeman closed the gate. The plaintiff at once felt that her dress was caught, turned round and tried to free it by pushing on the gate. A guard on the station platform called " Open the gate," but before the brakeman who was then looking into the car did so the plaintiff was thrown down and dragged some distance along the platform of the station. The plaintiff testified that she knew the subway was there for the purpose of enabling passengers to go from one platform to the other, but that she did not want to take her husband up and down the two flights of steps; " that she feared the exertion would be bad for him," and took the way across the elevated train " for her own convenience."

The plaintiff contends that there was evidence in the case which warranted the jury in finding that the defendant had invited her to use the elevated train as she did use it. The evidence on which this contention is based consists of the plaintiff's testimony that " she had frequently seen other people use trains as a bridge in crossing from one platform to the other," and

" she had never seen any signs or notices displayed in the terminal forbidding such crossing by means of the trains, and she had never seen any attempts made by the guards or trainmen to prevent it." There was testimony from two other witnesses that " it was a general practice for passengers going from one platform to the other to walk across the platform of the elevated cars standing in the station or through the cars," meaning through the doors in the middle of the sides of the cars. That " there were no notices posted by the defendant forbidding people to cross from one platform to the other by means of the trains standing there, and he had never seen any employee of the defendant forbidding any person to use the trains for this purpose or attempting to prevent any one from so using them." The defendant's station master testified that " he had seen people use the elevated trains to cross the tracks; that they had done so every day." Several of the defendant's employees testified " that they had been instructed not to allow people to cross by the trains, and when people asked them how to cross to the further platform they always directed them to use the subway; that passengers used the trains as a means to cross; and that witnesses did not and could not attempt to stop them, because when a person stepped on to the platform of an elevated car it was impossible to tell whether they intended to cross to the other platform or to go inside the car to ride."

It was said by Chief Justice Bigelow in *Sweeny* v. *Old Colony & Newport Railroad,* 10 Allen, 368, 374, that " a mere passive acquiescence by an owner or occupier in a certain use of his land by others involves no liability." In *Wheelwright* v. *Boston & Albany Railroad,* 135 Mass. 225, 229, it was said by Colburn, J.: " The most that can be contended, on the evidence, is, that the defendant had tolerated a practice, which the plaintiff and others had adopted, of crossing where she was attempting to cross, without taking any active measures to prevent it. This is far different from an inducement or invitation from the defendant to cross there." And in *Galligan* v. *Metacomet Manuf. Co.* 143 Mass. 527, 528, this rule of law was stated by C. Allen, J., in these words : " Merely abstaining from driving the children off is not an invitation which would impose any duty or responsibility for the condition of the lot." A number of cases have been since

decided on the rule of law thus clearly stated. See *Redigan* v. *Boston & Maine Railroad*, 155 Mass. 44; *Shea* v. *Gurney*, 163 Mass. 184; *Moffatt* v. *Kenny*, 174 Mass. 311; *Legge* v. *New York, New Haven, & Hartford Railroad*, 197 Mass. 88; *Bowler* v. *Pacific Mills*, 200 Mass. 364; *Boden* v. *Boston Elevated Railway*, 205 Mass. 504.

The case at bar comes within this well established principle. In addition there is in this case a point which was relied upon in the decision of the recent case of *Bowler* v. *Pacific Mills, ubi supra,* at p. 365, namely, that it would have been ·impracticable if not impossible to prevent persons from using the defendant's premises as they were used by the plaintiff without interfering with the defendant's business in the use of its premises in question. The cases of *Sweeny* v. *Old Colony & Newport Railroad,* 10 Allen, 368, and *Murphy* v. *Boston & Albany Railroad,* 133 Mass. 121, relied on by the plaintiff, were cases depending upon special circumstances which have been fully explained in previous cases. See *Bowler* v. *Pacific Mills,* 200 Mass. 364, 366, where the distinction is pointed out and these previous cases are collected.

*Exceptions overruled.*