JOHN M. WALSH *vs.* BOSTON ELEVATED RAILWAY COMPANY.
SAME *vs.* BAY STATE STREET RAILWAY COMPANY.

JOSEPH H. MACDONALD *vs.* BOSTON ELEVATED RAILWAY COMPANY.
SAME *vs.* BAY STATE STREET RAILWAY COMPANY.

Suffolk.   October 21, 1915. — November 24, 1915.

Present: RUGG, C. J., LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Negligence,* Assumption of risk, Street railway.

While the left hand running board of an open electric street car in motion is a place of such obvious danger that under ordinary circumstances a passenger, who voluntarily selects such a position instead of a safer one provided by the street car company, assumes all the risks connected with such a perilous position and, if he is injured by a passing car, is guilty of contributory negligence and cannot maintain an action to recover compensation for his injuries, nevertheless such is not the rule of law if the carrier expressly or impliedly agrees to carry the passenger in such a position although it is not in common use for such a purpose.

At the trial of an action by such a passenger, where it appeared that, as the car upon which the plaintiff was rounded a curve, the plaintiff was struck by the side of an unusually wide box car which met it on the adjoining track, there was evidence tending to show that, for four or five years previous to the plaintiff's injury, at the same time of day as that at which the plaintiff boarded the street car in question, and at the same place, passengers were in the habit of boarding the cars and of riding on both running boards; that, when the plaintiff boarded the left hand running board, the seats of the car were all filled and there were passengers on both running boards; that, although on each end of a bar at the end of the seats next the running board were printed the words "Dangerous.  Do not ride on the running board," there was evidence that the crowd so obscured

the words that the plaintiff did not see them and that he did not know until after his injury of a rule of the defendant prohibiting riding on the left hand running board; that he had no knowledge of the width of the car approaching or that it would strike him and did not notice it until it was within a few feet of him; that at that time he was standing with his back outward from the car, and that just before that time his attention had been diverted for a moment. *Held,* that findings were warranted that the defendant impliedly permitted the plaintiff to ride upon the left hand running board, that the plaintiff did not assume the risk of so riding, and that he was in the exercise of due care.

Where a motorman operating an open electric street car met upon a curve a box car of unusual width, operated on a parallel track by a different corporation, and a passenger who he knew was riding upon the left hand running board of his car by permission of the street railway company was struck by the box car and injured, in an action by the injured passenger against the street railway company, such motorman may be found to have been negligent.

And, in an action by the same passenger against the corporation operating the box car, the motorman of that car also may be found to have been negligent, because he must have seen the plaintiff on the left hand running board of the car he was meeting and must have known of the danger of meeting the car on a curve with a car of the width that he was operating.

Where at the trial of an action against a street railway company for injuries caused by being struck by a street railway car, there is evidence that only two corporations, the defendant and another corporation, operated cars on the track where the car in question was being operated, that none of the other corporation's cars were box cars, and that the car which struck the plaintiff was a yellow box car, which was the kind of car used by the defendant, there is evidence warranting a finding that the plaintiff was struck by a car operated by the defendant.

CARROLL, J.   These are actions of tort to recover for personal injuries sustained by the plaintiffs while they were riding on a car of the first named defendant.*   About five o'clock in the afternoon of July 13, 1913, the plaintiffs mounted the left hand running board of an open car of the Boston Elevated Railway Company on Chelsea Street, close to the Charlestown Navy Yard where they were employed.   While riding on this running board, they were struck by a car of the defendant in the second action, which was on the adjoining track and moving in an opposite direction. At the time the plaintiffs got upon the open car above mentioned, the seats were filled and many passengers were on both running boards.   There was evidence tending to show that for four or five years previous to this time at that particular time of the day and in that part of the city passengers were in the habit of

---

* The actions were tried together before *Lawton,* J., who at the close of all the evidence ordered verdicts for the defendants.   The plaintiffs alleged exceptions.

riding on both running boards. Walsh testified "that at the time he boarded the car, there were probably ten or a dozen other persons getting on the car; that the seats were all filled, and that passengers were on both running boards; that he boarded on the left hand running board somewhere around the middle of the car, perhaps a little back of the middle toward the rear; that there were several persons standing on the rear; that there were several persons standing on the running board at the same time; that several persons stood ahead of him on the running board, that is, between where he stood and the front of the car."

Near Henley Street the track curves, and while on this curve the plaintiffs were struck by a box car described as "a yellow car," "one of the big box cars," "a wider car than the other cars," "a very wide car."

1. The left hand running board of an electric car in motion is a place of such obvious danger that under ordinary circumstances a passenger who voluntarily selects such a position instead of the safer one provided by the carrier assumes all the risks connected with such a peril, is guilty of contributing negligence and cannot recover compensation for damages caused thereby. It cannot be said, however, in every case, independent of the special facts involved, that a passenger riding in such an exposed place thereby excuses the carrier from performing his legal duty. The carrier may expressly or impliedly agree to carry him in this part of the conveyance although it is not in common use for such a purpose. If there is such an understanding and sufficient facts appear to warrant this conclusion, it becomes the province of the jury to pass upon the care of the plaintiff and neglect of the defendant, assuming of course there is some evidence to sustain these contentions. Where the conveyance is so crowded that passengers are on both running boards, where for many years the employees as they came from work at this hour had ridden with the consent and knowledge of the defendant, the relation of passenger and carrier being established between them, a passenger so riding does not thereby assume the risk of the carrier's negligence, nor is he as matter of law by such an act lacking in the exercise of due care.

In *Moody* v. *Springfield Street Railway*, 182 Mass. 158, the plaintiff for his own convenience passed along the left hand run-

ning board when there were vacant seats in the car. The judge directed a verdict for the defendant. In sustaining the ruling this court said, "There may be circumstances, such as the crowded condition of the car, which justify him in standing or being upon the running board." In *Twiss* v. *Boston Elevated Railway*, 208 Mass. 108, the plaintiff was injured while on the left hand running board with the side bar down in violation of a rule with which he was familiar, which rule provided that no one was allowed to ride on the running board when the bar was down. In addition to this, as a member of the fire department he was travelling on a pass which permitted him to ride "only on the front platform of box and rear platform of open cars," while in the present case there was evidence that the side bar was down and on each end of it and in the middle there was printed, "Dangerous. Do not ride on the running board."

· The plaintiff Walsh testified "that he never knew until after the accident of a rule of the railroad that passengers should not ride on the left hand running board of cars." There was no evidence that MacDonald knew of such a rule. And considering the number of people on the running board the jury might have found that the printed notice was so hidden that the plaintiffs did not see it.

The plaintiff in *Olund* v. *Worcester Consolidated Street Railway*, 206 Mass. 544, was thrown from a car while on a running board. It was held that the question of his care was for the jury, but there was no evidence of the defendant's negligence. The same is true of *McCumber* v. *Boston Elevated Railway*, 207 Mass. 559. We do not consider the cases of *Hillman* v. *Boston Elevated Railway*, 207 Mass. 478, or *Bowden* v. *Boston Elevated Railway*, 205 Mass. 504, applicable to the case at bar, where a passenger is rightfully on the car and is being carried as a passenger when injured.

It was within the power of the defendant to prevent the plaintiffs from riding on the running board. In the case at bar this practice had become so notorious and had continued for so long a time at the hour of the day and at the place in question, considering all the circumstances, that, in the opinion of the majority of the court, the plaintiffs did not assume the risk of the defendant's negligence while so riding.

The majority of the court think there was sufficient evidence

of the plaintiffs' due care to warrant the submission of the cases to the jury. The plaintiffs had no knowledge of the width of the approaching car, the extent or danger of the curve or that a car would come in contact with them. Walsh testified that he was standing "with his back toward the street; . . . that he did not notice the car that hit him until it came within a few feet of him; that just prior thereto his attention had been diverted for a moment." MacDonald testified that "about the time he was struck he heard an outcry, and then he kind of hugged in close to the car and just in an instant he got smashed in the left shoulder and side." On cross-examination he testified: "Before I heard the outcry when Mr. Walsh was hit, I wasn't leaning out or anything like that to see if a car was coming." *Coy* v. *Boston Elevated Railway*, 212 Mass. 307. *Cutts* v. *Boston Elevated Railway*, 202 Mass. 450. *Sweetland* v. *Lynn & Boston Railroad*, 177 Mass. 574. *Pomeroy* v. *Boston & Northern Street Railway*, 193 Mass. 507.

2. There was evidence of the negligence of the Boston Elevated Railway Company. The motorman must have known that passengers were upon the left hand running board. He knew he was on a curve and a car of unusual width was approaching. Under these circumstances we cannot say, as matter of law, that this defendant was not negligent.

3. The car on the opposite track was a yellow box car. No cars were run on this track except those of the Boston Elevated Railway Company and the Bay State Street Railway Company. There was evidence that none of the elevated cars were box cars, but the cars of the Bay State Street Railway Company were yellow box cars. This was some evidence that the car which struck the plaintiffs was operated by the Bay State Street Railway Company. In view of the fact that the men on the running board at this particular place could be seen by the motorman of the approaching car and that he knew the swing of the car in rounding the curve, we think the negligence of the Bay State Street Railway Company was also a question of fact for the jury.

*Exceptions sustained.*

*J. M. Graham,* for the plaintiffs.

*E. P. Saltonstall,* for the Boston Elevated Railway Company.

*D. E. Hall,* for the Bay State Street Railway Company.