LEO COYNE *vs.* STEVEN P. MANIATTY.

ROSE COYNE *vs.* SAME.

Franklin.     January 15, 1920. — February 28, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, CARROLL, & JENNEY, JJ.

*Negligence*, Contributory, Motor vehicle. *Practice, Civil,* Conduct of trial: requests, rulings and instructions, Exceptions. *Agency*, Scope of authority or employment.

In an action against the owner of a motor truck used for delivering ice cream manufactured by the defendant, for personal injuries, received by the plaintiff in 1917 when riding on the running board of the truck and caused by negligence of the driver, there was evidence tending to show that the plaintiff, having ordered a gallon of ice cream of the defendant, called at his store and gave

directions as to the place of delivery, that an employee of the store took the ice cream to the sidewalk where the motor truck was standing, that a person in charge of the store told a bystander, who the plaintiff knew was not in the defendant's employ and who said he could operate the truck, to "Jump in and drive them [the employee and the plaintiff] up," that the ice cream was delivered and, as the truck was returning with the plaintiff riding on the running board, an accident happened through the driver's negligence which caused the plaintiff's injury. *Held,* that the question, whether the plaintiff was negligent in riding on the running board, was for the jury.

An exception to a refusal, by a judge presiding at a trial by jury, to grant a request for a ruling must be overruled if the ruling was given in substance in the charge to the jury.

A request for a ruling which assumes as true facts that are in controversy properly may be refused.

A refusal to grant a request, to give to a jury in terms a ruling which is a correct statement of law pertinent to the issues on trial, is not reversible error where the judge in his charge gives full and correct instructions to the jury on the subject matter of the ruling.

At the trial of an action for personal injuries caused by the negligent operation by a driver other than the defendant of a motor truck of the defendant, the question, whether the relation of master and servant existed between the defendant and the driver, was in issue. It appeared that the truck was used solely for the delivery of ice cream manufactured by the defendant, and that on the day of the accident the defendant was absent from his business and had left the truck in front of his store. There was evidence tending to show that the defendant had intended that his business should be carried on in his absence, that he had left his father in charge of it and that the carrying on of the business included not only the manufacturing and selling, but also the delivering of ice cream to customers, that the plaintiff had ordered ice cream and, there being no employee who could operate the truck, that the defendant's father had asked a bystander, who had stated that he could operate it, to drive it for the purpose of delivering the plaintiff's order, and that negligent operation of the truck by him, as he was returning to the defendant's store after delivering the order and with the plaintiff riding on the running board, had caused the plaintiff's injuries. *Held,* that a finding was warranted that such transient employment of a stranger for the purpose of delivering ice cream in the manner ordinarily employed by the defendant was within the scope of the authority of the defendant's father.

TWO ACTIONS OF TORT, the first action being by a boy eighteen years of age for personal injuries caused by negligent operation of a motor truck of the defendant while the plaintiff was riding on the running board, and the second action being by the mother of the plaintiff in the first action for consequential damages. Writs dated December 20, 1917.

In the Superior Court the actions were tried together before *Wait,* J. The material evidence is described in the opinion. At

the close of the evidence, the defendant asked for the following rulings among others:

"3. If the jury find that the plaintiff's want of ordinary care, or his misconduct while riding on the defendant's automobile contributed to produce the injury, the plaintiff is not entitled to recover.

"4. Mere possession of an automobile raises no presumption that the person operating it is a servant or agent of the owner."

"6. If the jury find that Peter Maniatty's duties were that of making ice cream and candy in the cellar, and that in consenting to the automobile being taken by a stranger, not in the defendant's employment, he was acting outside the scope of his authority, then the plaintiff is not entitled to recover."

"8. It was not within the scope of the authority of Peter Maniatty to invite or direct a stranger to drive the automobile of the defendant.

"9. An act done by a servant while engaged in his master's work, but not done as a means or for the purpose of performing that work, is not to be deemed the act of the master."

"11. If the jury find that Leo Coyne desired to ride on the running board of the automobile, after being requested to sit on the seat, and because of being on the running board he was injured, the defendant is not liable."

The rulings were refused. The jury found for the plaintiff in the first action in the sum of $1, and for the plaintiff in the second action in the sum of $300; and the defendant alleged exceptions.

The cases were submitted on briefs.

*T. M. Hayes*, for the defendant.

*F. J. Lawler*, for the plaintiffs.

JENNEY, J. On September 19, 1917, and for a considerable time previous to that date, the defendant was engaged in the manufacture and sale of ice cream and confectionery in Greenfield, maintaining a place of business where he received orders for and manufactured and sold his products. He had a motor truck, which he used solely in the delivery of ice cream, and which he left in front of the store when he went away on the day stated. On that day, he testified that he left his wife in charge of his business. She, however, did not give her entire time to the business, as she lived over the store and also attended to the

performance of her household duties. There was evidence that the defendant's father, who formerly had owned the business, worked for him, and sometimes waited on customers, taking orders and selling goods; and that on that day, the wife was not in the store, only the father being present when the plaintiff went there as herein described. One Jarvis also had been employed for a short time, whose duty it was, the defendant testified, to pack ice cream and to deliver it in his absence when requested by his wife. The defendant also testified that when he left town, he left whoever was in charge of his store to do as much business as possible; that when orders were received, they were to be delivered by some one who worked for him; and that at the time in question, he had no one to drive his motor truck in his absence, and, if any order had to be delivered, it necessarily would be delivered on foot.

About noon of the day stated, Leo Coyne, eighteen years old, ordered a gallon of ice cream over the telephone, giving the order to the defendant's wife and telling her that he would come to the store to pay for it and to give directions as to the place of its delivery. In the evening he went to the store and there saw the defendant's father who asked him where the ice cream was to be delivered and requested him to point out the place of delivery. The father packed the order, and Jarvis took it to the sidewalk, having been previously directed by the defendant's wife to deliver it. One Dinsmore, who, as Coyne knew, was not in the defendant's employ, was standing on the sidewalk. The defendant's father asked him if he knew how to run an automobile, and he said he did. Thereupon the father said, "Jump in and drive them up." Dinsmore and Jarvis occupied the only seat, which was not long enough to accommodate three, and Coyne stood on the running board. Dinsmore drove the motor truck. The ice cream was delivered, and, while returning, Coyne was injured. The jury were "permitted to inspect" the motor truck.

The defendant does not question the sufficiency of the evidence to warrant a finding that Dinsmore's negligence caused the injury, but contends that the plaintiff was guilty of contributory negligence, and that Dinsmore did not act within the scope of authority properly conferred on him.

The facts stated were largely in controversy, but the jury

properly could have found them to have been as recited. Two actions were brought, one by Coyne to recover the damages sustained by him, and the other by his mother for her consequential loss. Manifestly both cases are governed by the same considerations. The jury found for the plaintiffs. The only exceptions are to the refusal of the judge to give certain rulings.

1. Requests numbered 3 and 11 related to the due care of the plaintiff. They were refused rightly. It was for the jury to determine whether Coyne was negligent in riding on the running board. The position of the plaintiff was somewhat analogous to that of one who rides on the running board of a street railway car. See *Powers* v. *Boston,* 154 Mass. 60; *Egan* v. *Old Colony Street Railway,* 195 Mass. 159; *Olund* v. *Worcester Consolidated Street Railway,* 206 Mass. 544; *Walsh* v. *Boston Elevated Railway,* 222 Mass. 275. The third request was given in substance, and the eleventh also was given so far as proper in view of the controverted facts.

2. The failure to give the fourth request, based on *Hartnett* v. *Gryzmish,* 218 Mass. 258, that "Mere possession of an automobile raises no presumption that the person operating it is a servant or agent of the owner," did not prejudice the defendant. The jury were carefully and fully instructed that the plaintiffs could not recover unless the motor-truck was being operated on the defendant's behalf, in his business, and under his authority, with abundant application of the evidence to the law. The jury were instructed that the plaintiffs, in order to recover, must sustain the burden of proving that the driver of the motor truck was the servant of the defendant. While the request could have been given properly, the failure to give it, in view of the charge, was not reversible error.

3. The sixth request, which sought a ruling that the plaintiffs could not recover if the defendant's father acted outside the scope of his authority "in consenting to the automobile being taken by a stranger," was refused properly because it assumed that the father merely assented to the use. The evidence justified the finding that he directed Dinsmore to use it.

4. The remaining requests relate solely to the authority of the father to direct Dinsmore to operate the motor truck for the purpose of delivering ice cream. The last of these stated ab-

stractly the rule of law, that an act done by a servant must be within the scope of the employer's business. The instructions given fully and correctly covered this phase of the case. The eighth request, however, directly challenges the power of the father to authorize Dinsmore to operate the motor truck. The judge dealt with this question solely on the basis that it could be found that Dinsmore was not a mere volunteer; and said that "the circumstances of the case show and would justify you [the jury] in saying that Peter Maniatty had authority, had the power, from his ordinary duties in connection with the defendant's business, to employ a man or to let him take the machine and to subject his employer to liability in consequence. Well, that is for you to say, on the evidence. . . . The defendant says that he left his wife in charge of the business, that she was the responsible head of it, and that she was the person, and the only person, that was authorized to direct what should be done. If that is true, and she did not act in this case . . . then there is no liability on the part of the defendant. It does not lie within the power of anybody I may choose to employ to employ somebody else and subject me to liability, and I am not responsible for the acts of a volunteer who undertakes to do my business without any authority from me. But if you are satisfied by the evidence that Peter Maniatty was his agent in connection with the business, that it was the understanding of the defendant that, while he was gone, Peter could do such things as this, then you would be justified in inferring authority in Peter to do it, and that authority has got to come either by direct word of mouth or writing from the defendant, or from the fair inference from the general conduct of his business; in other words, what I have said with regard to the conduct of the business, the acts which are done with the knowledge and without objection of the person in charge of the business, which were in the regular and customary course of the defendant's business, would justify you in finding that they were binding upon the defendant and that any negligence in connection with them would be negligence for which he would be responsible."

While the question is close, we think that the evidence justified the submission of the case to the jury, as to the authority of the father to arrange for the delivery of the ice cream by Dinsmore.

The defendant was away; he left his motor truck in front of his store; it was used solely for the delivery of ice cream; and the defendant intended that his business should be carried on and ice cream delivered in his absence. Although he testified that, in his absence, ice cream would have to be delivered on foot, the jury were not bound by his undisclosed limitation on the manner in which his business usually was transacted, and could find that he had left his father in charge of his business with authority to carry it on in his absence; and further, that the transient employment of a stranger for the purpose of delivering goods in the manner ordinarily employed, was within the scope of the father's authority. The jury would have been justified in finding that the defendant had placed his father in a position where the proper conduct of the business required him to do that which he did. In this case it could have been found that the power to sell implied the right to complete the sale by delivery, using the means customarily provided for that purpose. *Sandon* v. *Kendall,* 233 Mass. 292. The instructions given to the jury, without any exception having been taken thereto, were based upon and restricted to this aspect of the case. The exceptions must be overruled.

*So ordered.*