JENKINS, RESPONDENT, *v.* NORTHERN PACIFIC RY. CO.,
APPELLANT.

(No. 3,032.)

(Submitted November ·24, 1911.   Decided December 8, 1911.)·

[119 Pac. 794.]

*Personal Injuries — Railroads — Negligence — Evidence—Infer-
ences—Damages—Pleading.*

Carriers—Personal Injuries on Depot Platform—Negligence—Presumptions
—Inference.
   1.   A passenger of another railroad company required to pass over the
depot platform of defendant railroad company was injured by step-
ping into an uncovered water hole in the platform.   The defendant was
in the exclusive control of the platform and water holes used for
watering its trains, an extra number of which had been watered during
the day before the accident.   The weather was cold, and the employees
were busy and had frequent occasion to uncover the holes, and no
other person had any authority to open them.   The employees opening
the holes were instructed not to leave them uncovered.   *Held,* that,
though negligence will not be presumed, an inference that the employees
omitted to re-cover the hole was justified, authorizing a recovery against
the latter company.

Same—Damages—Pleading—Evidence.
   2.   A complaint in an action for personal injuries, which alleges that
plaintiff was injured and bruised on her right ankle, leg, hip, and body,
is, in the absence of a special demurrer or demand for a bill of par-
ticulars, sufficient to authorize evidence of an internal injury, the word
"body" comprehending all portions of the body, inside and outside, and
advising defendant that plaintiff would prove injuries to portions of
her body other than her ankle, leg, and hip.

*Appeal from   District   Court,   Yellowstone   County; Frank
Henry, Judge.*

ACTION by Margaret Jenkins against the Northern Pacific
Railway Company.   From a judgment for plaintiff, and from
an order denying a new trial, defendant appeals.   Affirmed.

*Mr. W. M. Johnston, Mr. Wm. Wallace, Jr., Mr. John G.
Brown,* and *Mr. R. F. Gaines,* for Appellant, submitted a brief.

To constitute a cause of action for a tort, it is necessary that
there should be (a) some right existing in the plaintiff, (b)
some duty on the part of defendant to respect that right, (c)
a breach of that duty by defendant, and (d) injury and dam-

age as a result thereof. (*Dillon* v. *Gt. Northern Ry. Co.*, 38 Mont. 485, 100 Pac. 960.) With respect to the complaint in the case at bar, we insist there has been an entire failure to allege facts which are sufficient to establish any right of respondent to be upon the premises of appellant and, consequently, in the absence of allegations of willful wrongdoing, no showing of breach of any duty owing. True, it is alleged "that the defendant company owed a duty to the plaintiff not to commit, nor suffer to be committed, any of the acts of negligence hereinbefore complained of," but the bald assertion that a "duty" exists is insufficient in the absence of facts also pleaded from which such a duty is made to appear. (6 Thompson on Negligence, sec. 7458; 29 Cyc. p. 567; *Kipp* v. *Copper Co.*, 41 Mont. 509, 110 Pac. 237; *Pullen* v. *City of Butte*, 38 Mont. 194, 99 Pac. 290, 21 L. R. A., n. s., 42.)

The duty of a railroad company to furnish stational facilities does not extend to every person in a community, nor to every person entering upon its premises, nor to every person riding upon its trains. This duty arises only by reason of some legal relation between the person and the railroad company. A railroad owes, concomitantly with its duty to exercise the highest degree of care and caution for actual carriage of passengers, the duty to exercise reasonable care to furnish for passengers reasonably safe avenues of approach to and departure from their premises and trains. It likewise owes a similar duty to persons coming upon its premises by invitation, express or implied. But to the interloper, of whatever character, no such obligation is due. (3 Thompson on Negligence, sec. 2687.) There has been a failure in this complaint to charge facts from which any sort of invitation to respondent to use the station platform can be reasonably inferred. (*Driscoll* v. *Clark*, 32 Mont. 185, 80 Pac. 1, 373.)

The basis of respondent's right to be upon this station platform, as she charges it in her complaint, is the fact that she was a passenger upon the train of another railroad company. She does not claim to be a privy to any possible joint working agreement existing between the Burlington and the Northern

Pacific; nor does she suggest the existence of any such agreement.  She discloses no business relations of any kind existing between appellant and herself; nor does she make any suggestion of invitation to be upon the premises, either express or implied.  Nor does she allege either gross or wanton or willful injury upon the part of appellant.  We accordingly submit the complaint is insufficient to support the judgment.

*Messrs. Gunn & Rasch, Mr. E. M. Hall,* and *Mr. W. W. Patterson,* for Appellant, submitted a brief; *Mr. M. S. Gunn* argued the cause orally.

We shall assume, for the purpose of this argument, that the plaintiff was a passenger upon the train which she was leaving at the time of the accident.  We shall also concede that it was the duty of the defendant to exercise ordinary care to keep the station and the premises adjacent thereto over which passengers were required to pass in going to and from trains reasonably safe.  The same duty devolved upon the defendant in this regard as is imposed by law upon the owner or occupant of land who invites others to come upon his premises.  (*Union Depot & Ry. Co.* v. *Londoner,* 50 Colo. 22, 114 Pac. 317; *Herrman* v. *Great Northern Ry. Co.,* 27 Wash. 472, 68 Pac. 82, 57 L. R. A. 390.)  The defendant cannot be charged with a violation of the duty of exercising ordinary care unless the cover of the hole was removed by the defendant or by someone for whose conduct it was responsible or the defendant knew that the opening existed, or the hole had been uncovered a sufficient length of time to charge the defendant with notice.  (*Goddard* v. *Boston & M. R. Co.,* 179 Mass. 52, 60 N. E. 486; *Kelley* v. *New York etc. Ry. Co.,* 109 N. Y. 44, 15 N. E. 879; *Munroe* v. *St. Louis & S. F. & R. Co.,* 155 Mo. App. 710, 135 S. W. 1016; *Toland* v. *Paine Furniture Co.,* 175 Mass. 476, 56 N. E. 608; *Louisville etc. Railway Co.* v. *Wolfe,* 80 Ky. 82; *Toledo etc. Railway Co.* v. *Grush,* 67 Ill. 262, 16 Am. Rep. 618; *Fullerton* v. *Fordyce,* 121 Mo. 1, 42 Am. St. Rep. 516, 25 S. W. 587.)  The defendant owed to the plaintiff the same duty to maintain its premises in a reasonably safe condition that is imposed upon a municipality;

with reference to the public streets. (5 Thompson on Negligence, sec. 5966; *Leonard* v. *City of Butte,* 25 Mont. 410, 65 Pac. 425.)

According to the complaint it was the neglect and failure of the defendant to have its premises properly lighted, concurring with the neglect and failure to have the hole covered, that caused the accident. It is apparent from the complaint, as well as from the proof, that, if the cover had been placed over the hole, the accident would not have occurred notwithstanding any failure or neglect on the part of the defendant in not having the place where the hole was located properly lighted. If, then, the defendant is not chargeable with negligence by reason of the cover being off of the hole, it necessarily follows that the defendant is not liable for the injuries sustained by the plaintiff. (*Frederick* v. *Hale,* 42 Mont. 153, 112 Pac. 70; *Wormsdorf* v. *Detroit City Ry. Co.,* 75 Mich. 472, 13 Am. St. Rep. 453, 42 N. W. 1000.) This last case is cited approvingly by this court in the case of *Forsell* v. *Pittsburgh & Montana Copper Co.,* 38 Mont. 403, 100 Pac. 218. The failure to properly light the premises, if there was any failure or neglect in this regard, was not the proximate cause of the accident. The proximate cause of the accident was the opening into which the plaintiff stepped and unless the defendant was responsible for this condition, it cannot be held liable to the plaintiff for the injuries sustained by her. (*American Bridge Co.* v. *Seeds,* 144 Fed. 605, 75 C. C. A. 407, 11 L. R. A., n. s., 1041.)

*Messrs. Hathhorn & Brown,* and *Mr. Thad. S. Smith,* for Respondent, submitted a brief; and one in reply to those of appellant. *Messrs. Hathhorn* and *Smith* argued the cause orally.

"The principle that a person, while upon the premises of another, by invitation express or implied, is entitled to the exercise of due care on the part of the property owner for his protection, may be illustrated by the class of actions brought to recover damages for the failure on the part of railroad companies to maintain their stations in proper condition for the reception of pas-

sengers and those rightfully resorting there." (1 Thompson
on Negligence, sec. 1002; 33 Cyc. 805, and cases cited.) White's
Supplement to Thompson on Negligence, section 2686, lays down
the following rule: "Persons not passengers on the premises of
the carrier for any lawful purpose are regarded as licensees
toward whom the carrier is required to exercise only ordinary
care and prudence in the maintenance of its station and grounds
to avoid injuring him," and cites in support of that doctrine
*Smoak* v. *Savannah R. Co.,* 65 S. C. 299, 43 S. E. 662. The
doctrines heretofore laid down are particularly borne out in an
opinion by Mr. Justice Harlan in the case of *Bennett* v. *Railroad
Company,* 102 U. S. 577, 26 L. Ed. 235. (See, also, *Indiana
Ry. Co.* v. *Barnhart,* 115 Ind. 408, 16 N. E. 126; *Philips* v.
*Library Co.,* 55 N. J. L. 313, 27 Atl. 480; *Herrman* v. *Great
Northern Ry. Co.,* 27 Wash. 472, 68 Pac. 82, 57 L. R. A. 390;
*Carver* v. *Minneapolis etc. Ry. Co.,* 120 Iowa, 346, 94 N. W. 862;
*Green* v. *Pennsylvania Ry. Co.,* 36 Fed. 66.) Under the sub-
stantive law laid down in the foregoing text and decisions, re-
spondent maintains that under the allegations of the complaint
there can be no doubt that the appellant owed to the respondent
the duty of using reasonable care in furnishing a proper place
for her to go from where she alighted from the train upon
which she was a passenger to the station of appellant.

The complaint was sufficient to justify the introduction of
the testimony relative to the injury to plaintiff's internal or-
gans. The allegation is that she "was thereby greatly in-
jured and bruised upon her right ankle, leg, hip and body,
* * * " and "became disabled and injured and ever since
that time has been disabled and injured." The general alle-
gation of injury and disablement of respondent was sufficient
to admit testimony above referred to. (See *Terre Haute & I.
R. Co.* v. *Pritchard,* 37 Ind. App. 420, 76 N. E. 1070; *Wilber*
v. *S. W. Mo. Electric R. Co.,* 110 Mo. App. 689, 85 S. W. 671;
*Rudomin* v. *Interurban Ry. Co.,* 98 N. Y. Supp. 506, 111 App.
Div. 548; *Quirk* v. *Siegel-Cooper Co.,* 60 N. Y. Supp. 228, 43
App. Div. 464; *Montgomery* v. *Lansing City Electric Ry. Co.,*
103 Mich. 46, 61 N. W. 543, 29 L. R. A. 287; *Snyder* v. *City*

*of Albion,* 113 Mich. 275, 71 N. W. 475; *Comstock* v. *Georgetown Township,* 137 Mich. 541, 100 N. W. 788; *City of South Omaha* v. *Sutliffe,* 72 Neb. 746, 101 N. W. 997; *Cudahy Packing Co.* v. *Broadbent,* 70 Kan. 535, 79 Pac. 126; *City of Eureka* v. *Neville,* 70 Kan. 893, 79 Pac. 162; *Croco* v. *Oregon Short Line Ry. Co.,* 18 Utah, 311, 54 Pac. 985, 44 L. R. A. 285; *Mauch* v. *City of Hartford,* 112 Wis. 40, 87 N. W. 816; *Youngblood* v. *South Carolina & G. R. Co.,* 60 S. C. 9, 85 Am. St. Rep. 824, 38 S. E. 232; *Bodie* v. *Charleston & W. C. R. Co.,* 61 S. C. 468, 39 S. E. 715; *Lauder* v. *Currier,* 3 Cal. App. 28, 84 Pac. 217; *Denver & R. G. R. Co.* v. *Harris,* 122 U. S. 597 (608), 7 Sup. Ct. 1286, 30 L. Ed. 1146; 5 Ency. of Pl. & Pr. 746, 747.) When appellant examined respondent's complaint and before making answer thereto, it certainly must have occurred that the words "injuries to the body" were not idly inserted in the complaint, and that some proof might be offered as to injuries other than those to the ankle, leg and hip. He could have filed a special demurrer or presented a motion asking for a bill of particulars (*Mauch* v. *City of Hartford, supra*), or asked for a continuance on the ground of surprise (*Montgomery* v. *Lansing City Electric R. Co., supra*), and we must assume, therefore, that appellant felt secure in its ability to establish the fact that there was no injury, or that, if there was, it was covered by their special defense of contributory negligence.

MR. JUSTICE SMITH delivered the opinion of the court.

Action to recover damages for personal injuries alleged to have been sustained by reason of the negligence of the defendant. Appeals from a judgment on verdict for the plaintiff, and from an order denying a new trial.

The complaint alleges that the defendant corporation "operated a line of railroad in and through the city of Billings, and in connection therewith maintained and operated a passenger station, platform, and sidetracks in said city for the purpose of accommodating passengers using said line of railway and persons traveling to and from the city of Billings by railroad." This allegation is admitted by the answer. The testi-

mony shows that on January 7, 1910, plaintiff left her home in Sheridan, Wyoming, on train No. 41 of the Chicago, Burlington & Quincy Railroad, and arrived at Billings at 9 o'clock at night; the train stopped on the third track south of and nearly opposite the defendant's depot in Billings and all the passengers got off; the night was dark and the platform was dark; while going along the track platform on her way to the defendant's depot she fell into an open water hole in the platform and was severely injured; she did not see the water hole when she stepped into it; there was no rail or other protection around it, and no person about the train to show her to the depot; the water holes were used for watering trains, and each had an iron cover to close it when not in use; there had been a blockade on defendant's line, which was relieved on the day in question; the first train from the West reached Billings at 3:10 that afternoon, "and then a continual string of trains from that time on until 1 o'clock the next morning, going both ways—plenty of cars to water."

H. Y. Brown, defendant's car foreman, testified: "I was there to see that things went right. I did not see any water hole open there that night. I could not watch all of them—twelve or thirteen of them—and I could not watch each one. I was there to see that these holes as much as I could were kept closed. If left open it was wrong, and I was there to correct anything that was wrong. Eighteen or twenty trains came in from 3 o'clock until midnight on the afternoon and evening of January 7."

Swanson, an employee of the defendant company who was on duty that night, testified: "I didn't see any of these water holes in the platform open that night because the man [men] that opens these and waters the coaches have special orders not to leave none of these holes open, and if you do and it is known to anyone you will get discharged. The chances are they were open. I didn't see none. I couldn't say whether they were or not. We see them open every day. I seen them take a hose off and put the cover on."

1. Plaintiff's counsel contend that it was the duty of the defendant to exercise ordinary care to keep its premises, over which the Chicago, Burlington & Quincy passengers were required to pass to and from trains, reasonably safe for their passage, and this is conceded by counsel for the defendant. But the latter argue that the defendant cannot be charged with a violation of such duty in this case unless the cover of the water hole was shown to have been removed by it, or by someone for whose conduct it was responsible; or that it knew the hole was open; or that, in the absence of actual notice, the hole had been uncovered a sufficient length of time to charge it with constructive notice. If the plaintiff, however, made a *prima facie* showing that the cover was removed by some servant of the defendant, then it becomes unnecessary to consider the questions of notice and lapse of time.

It is contended that there is not any evidence to show who removed the cover, and that it may have been done by some one not in privity with the defendant. We think this latter consideration may be disregarded. There is not any evidence or even a suggestion that an outsider ever opened one of the water holes. To do so would have been a trespass which is not to be presumed. The argument on this point is founded in mere conjecture, which is not permissible. While it is also true that negligence is not to be presumed, still, we think, there is testimony sufficient to warrant the conclusion that the hole in question was left uncovered by some employee of the defendant. Let it be borne in mind that the depot grounds belonged to the defendant, and that it, through its employees, was in the exclusive management and control of the platform and water holes and constantly using the latter. There was no defect in the platform or appurtenances—no breaking thereof; no unnatural, uncommon or extraordinary situation is disclosed. On the contrary, the physical condition of the water hole—that is, the condition of being open—was in strict accord with the plan of its construction and use. We think the railroad company, in the absence of evidence to the contrary, may fairly be presumed to be responsible for a condition of its property which is in entire

harmony with the notion of recent use by one of its servants for an ordinary and legitimate purpose. The record shows that a blockade had just been broken and many trains were passing, some or all of which required to be watered. Many were watered. The weather was cold, and it may also be deduced, we think, from the testimony, that the defendant's employees were extraordinarily busy on account of the passage of so many trains. Brown testified that there were so many water holes that he could not watch all of them, although he was there for the purpose of seeing that the holes were kept closed "as much as he could." It is not the injury, but the manner and circumstances of the injury, that justify the inference of negligence. Defendant's employees had frequent occasion to uncover the holes, and no other person had any authority to open them. It appears from Swanson's testimony that to some one or more of the employees was delegated the duty of opening and closing the holes, but not any of them were produced as witnesses, nor was any explanation offered of their absence from the trial. Inference is one kind of indirect evidence. (Rev. Codes, sec. 7956.) An inference is a deduction which the reason of the jury makes from the facts proved without an express direction of the law to that effect. (Rev. Codes, sec. 7957.). "An inference must be founded (1) on a fact legally proved; and (2) on such a deduction from that fact as is warranted by a consideration of the usual propensities * * * of men." (Rev. Codes, sec.. 7959.) We think it not an unwarranted inference from the proven facts in this case that the employees of [1] the defendant company who were charged with the duty of watering trains, in the hurry and disorder incident to the arrival and departure of so many trains, on the cold day in question, omitted to re-cover the water hole into which the plaintiff fell. If this inference be a reasonable one, which we think it is, and no other reasonable inference can be drawn from the evidence, then the jury was justified in founding a verdict upon it.

The supreme judicial court of Massachusetts, in *Smith* v. *Boston Gaslight Co.,* 129 Mass. 318, where the trial court told the

jury "that there was evidence enough of want of proper care on the part of the defendant to make it responsible on the ground that it was bound to conduct its gas in a proper manner, and that the fact that the gas escaped was *prima facie* evidence of some neglect on the part of the defendant," in affirming the judgment said: "The escape of gas from a defective pipe into the room occupied by the plaintiff, with no explanation of the cause other than was offered, was some evidence of negligence. The pipes were made to contain the gas and conduct it safely, and it was the defendant's duty to see that they were constructed in a proper form and of proper material; and that they were laid in the ground at a proper depth and in a suitable manner and kept in proper repair for that purpose. The construction and care of the works were exclusively in the hands of the defendant, and no cause independently of some negligence on its part is shown to have produced the effect."

2. Plaintiff alleged in her complaint that she was "injured and bruised upon her right ankle, leg, hip, and body." She was allowed to prove, over objection, that she had suffered an injury to her uterus. We find no error in this. The word "body" comprehends all portions of the body, inside and outside, and the general term employed advised the defendant that she would prove injuries to portions of her body other than her ankle, leg and hip. The indefinite and uncertain allegation of the pleading might have been taken advantage of before answering, but the point raised for the first time at the trial came too late. A general allegation of bodily injury is sufficient to warrant a trial court in receiving evidence of any injury to the person, in the absence of a special demurrer or demand for a bill of particulars. (*Gordan* v. *Northern Pacific Ry. Co.,* 39 Mont. 571, 104 Pac. 679.)

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.