AHLQUIST, APPELLANT, *v.* MULVANEY REALTY CO. ET AL., RESPONDENTS.

(No. 8376.)

(Submitted November 19, 1943. Decided April 12, 1944.)

[152 Pac. (2d) 137.]

8

*Messrs. F. F. Haynes, Thomas C. Colton, H. L. Maury, A. G. Shone,* and *M. Baxter Larson,* for Appellant, submitted a brief; *Messrs. Colton* and *Maury* argued the cause orally.

*Messrs. Rockwood Brown, Horace S. Davis* and *M. J. Lamb,* for Respondent Mulvaney Realty Company, submitted a brief; *Mr. Davis* and *Mr. Lamb* argued the cause orally.

*Messrs. Coleman, Jameson & Lamey,* and *Messrs. Cale Crowley* and *James H. Kilbourne,* for Respondent Northland Greyhound Lines, Inc., submitted a brief; *Mr. W. J. Jameson, Jr.,* argued the cause orally.

HONORABLE C. E. COMER, District Judge sitting in place

10

of Mr. Justice MORRIS, disqualified, delivered the opinion of the court.

This is an action brought by Isabelle Ahlquist, the plaintiff and appellant, against the two defendants and respondents, Mulvaney Realty Company, and the Northland Greyhound Lines, Incorporated, to recover damages for personal injuries sustained on the 21st day of December, 1939, by the plaintiff, an alleged invitee of the defendants and respondents, by reason of a fall in the combined wash and toilet room of the depot facilities of the defendants, at the City of Billings, this state, alleged to have been proximately caused by the negligence of the defendants and respondents, in that:

(1) The flooring of the corridor and toilet space in the combined wash and toilet room, was seven inches higher than the wash room portion thereof, the rise being perpendicular, and that a person going from the toilet room and corridor to the wash room portion of said combined wash and toilet room, must step down seven inches;

(2) That the top of this step had originally been painted white, so as to attract the eyes of a person going into the toilet, and calling attention to the fact that a person going in the toilet must step up seven inches, and also for the purpose of calling attention to people coming out of the toilet, that they must step down seven inches; that the defendants negligently permitted the said white stripe to become obliterated as of the date of the plaintiff's injuries, so that the same could not be easily seen, and that the step down would not be noticed by a person coming out of the toilet;

(3) That the said combined toilet and wash room was not lighted, but was in almost complete darkness;

(4) That the flooring of the wash room space was of substantially the same color as the flooring in the corridor and toilet space, producing, in effect, the appearance of a common level of the flooring in the combined wash and toilet room, so that the riser would not be noticed by one coming in or going out of the toilet;

(5) That the only light which came into the combined toilet and wash room, was from the light in the powder room, through the door between the powder room and the combined wash and toilet room, and through two windows in the partition between the passenger waiting room, and the said combined wash and toilet room; that these two windows were situated so that the light coming in from the passenger waiting room would shine directly into the eyes of a person coming out of the women's toilet, on to the corridor, just as such person would approach the step down, and further render the same difficult to see, all of which produced the effect of confusing and deceiving plaintiff, or any ordinary person using the same, into the belief that both floors were on the same level, and because thereof, there was then existing a most dangerous condition to all persons using the toilet portion of the said wash and toilet room.

The defendants for their defense allege:

(1) That the plaintiff was not an invitee, but a trespasser in said premises and facilities;

(2) That the defendants owed her no legal duty;

(3) That the negligence of the plaintiff proximately contributed to any injuries she may have sustained; and

(4) That neither of the defendants is guilty of any negligence proximately causing any injuries the plaintiff may have sustained.

Plaintiff, in reply, denies she was a trespasser in said depot facilities, and alleges she was rightfully therein, and that she was an invitee, for that, she entered said depot facilities for the purpose of making inquiry at the ticket office of the defendants as to the time of departure of a passenger bus that afternoon for Worland, Wyoming, and to become a passenger on a bus of the defendant, Northland Greyhound Lines, Inc., or some other bus company operating a bus for passengers to said Worland.

The cause came on for trial, and a jury was duly selected and sworn; objection was made by both defendants to the introduction of any testimony by the plaintiff, upon the ground that

the allegations of the replies of the plaintiff constituted a departure from the allegations of negligence set forth in the complaint of the plaintiff. This objection was, by the court, overruled.

At the close of the plaintiff's case, a motion was made by both defendants for a nonsuit, and for a dismissal of the action, and after argument, the court sustained the motion as to the defendant Northland Greyhound Lines but overruled the motion as to the Mulvaney Realty Company, and the cause then proceeded as between the plaintiff, Ahlquist, and the defendant, Mulvaney Realty Company.

At the close of the testimony, a motion was made by the said defendant, Mulvaney Realty Company, to the court, to direct a verdict for said defendant, Mulvaney Realty Company, which was by the court granted. Separate judgments of dismissal were thereafter given and made, in favor of both defendants, and against the plaintiff, and from these judgments of dismissal, the plaintiff has appealed to this court.

Several specifications of error are made by the plaintiff, particularly that the district court erred in granting a nonsuit in favor of the defendant, Northland Greyhound Lines, and directing a verdict in favor of the defendant, Mulvaney Realty Company, and in relation to several rulings upon admission of testimony.

The first question arising upon this appeal is as to the correctness of the decision of the district court overruling the objections of the defendants to the admission of any testimony by the plaintiff, for the reason the allegations of the plaintiff, in the respective replies to the answers of the defendants, constituted an express departure from the only allegations of negligence upon which the plaintiff could rely, set out in the complaint, and the defendants earnestly contend that by reason thereof, this action cannot be maintained against either of the defendants herein.

The complaint alleges the lease of the premises from the defendant, Mulvaney Realty Company to the defendant, Northland

Greyhound Lines, for use as a bus depot, wherein passengers and intended passengers could purchase tickets and wait for buses; that the defendants mutually agreed, directly or impliedly, that the said premises and the said women's rest room, could be used by customers and patrons of either defendant, and that the plaintiff was an invitee in said premises.

The Mulvaney Realty Company alleges in its answer, in an affirmative defense, that the plaintiff was not a bus passenger, but a trespasser in said facilities, and in her amended reply, the plaintiff states: "Plaintiff alleges that she intended to visit the office of the defendant, Northland Greyhound Lines, Inc., as soon as she left the said rest room, and there get information as to the time of departure of buses of the said defendant, Northland Greyhound Lines, Inc., and other lines using said station, for the next day, the 22nd day of December, 1939, for Worland, Wyoming, whither she was going by a bus leaving the said station on the next day; and that she would have, on said 21st day of December, 1939, procured the said information at the bus office in the said building, and transacted business at said bus office; and after procuring such information, on the next day she would have purchased a ticket and gone by bus from said station to Worland, Wyoming. That she was an invitee into all parts of the premises which she visited on the 21st day of December, 1939." The answer of the defendant, Northland Greyhound Lines, Inc., contains, substantially, the same affirmative defense, and the plaintiff's reply thereto is substantially the same.

There is no departure here. Plaintiff having in her complaint alleged she was, as to both defendants, an invitee in said premises, and the defendants having in their separate answers alleged said powder room and toilet were for the use of bus passengers only, and that the plaintiff was not a bus passenger, and, therefore, not an invitee of the defendants, but that she was a trespasser, it was incumbent upon, and it was the right of the plaintiff to allege and show how she came to be in the bus

14

depot, and state facts showing she was not a trespasser in said facilities, but an invitee.

These replies constituted a defense to the new matter; that is, a defense as to the allegations that plaintiff was a trespasser, set up in the answers of the defendants, and did not constitute a departure. In the case of *McCarthy* v. *Employers' Fire Ins. Co.*, 97 Mont. 540, 37 Pac. (2d) 579, 583, 97 A. L. R. 292, this court said: ''The function of a reply is to join issue on a counterclaim or new matter by way of defense appearing in the answer, and therein the plaintiff may set up 'any new matter, not inconsistent with the complaint, constituting a defense to such counterclaim or new matter in the answer' (section 9158, Rev. Codes, 1921), or to avoid the effect of new matter alleged as a defense (*Buhler* v. *Loftus,* 53 Mont. 546, 165 Pac. 601).'' There was no departure herein, and the district judge was clearly correct in his ruling.

Did the plaintiff offer substantial evidence herein sufficient to take the case to the jury, showing said facilities negligently maintained in an unsafe condition, and that said injuries sustained by the plaintiff were proximately caused thereby? We will here discuss only the question of whether there is any substantial evidence tending to show the premises were maintained in an unsafe condition as to any person thereon. We will later take up the question of whether these defendants, or either of them, owed any duty to the plaintiff to maintain the premises and facilities in a safe condition.

The rule in this state is that a nonsuit should not be granted where, under any view of the testimony, the plaintiff might be permitted to recover, viewing the testimony in the light most favorable to the plaintiff. (*Sprinkle* v. *Anderson,* 57 Mont. 223, 187 Pac. 908.) In the case of *Loudon* v. *Scott,* 58 Mont. 645, 194 Pac. 488, 490, 12 A. L. R. 1487 the court said: ''But whenever there is not any evidence in support of plaintiff's case, or the evidence is so unsubstantial that the court would feel compelled to set aside the verdict, if one should be returned for the plaintiff, a nonsuit should be granted.'' (*Escal-*

lier v. *Great Northern Ry. Co.*, 46 Mont. 238, 127 Pac. 458, Ann. Cas. 1914B, 468.)

Under the Revised Codes of 1935, section 9317, providing for a dismissal or nonsuit for failure of proof, whether there is substantial evidence in support of plaintiff's case, is always a question of law for the court. (*Flynn* v. *Poindexter & Orr Livestock Co.*, 63 Mont. 337, 207 Pac. 341.)

The evidence herein fairly shows that the defendant, Mulmaney Realty Company, on and before the 21st day of December, 1939, when the plaintiff received her injuries, was the owner of a concrete building situated in Billings, in this state, and operated therein an automobile garage, and took cars for storage, and issued storage tickets for cars stored therein. In the year 1933, the Northland Greyhound Lines, the Burlington Trailways System and the Billings-Sheridan Bus Line, all engaged in the business of carrying passengers and baggage for hire, began using the bus depot and facilities situated in said building without any written contract.

On the first day of February, 1938, the defendant, Mulvaney Realty Company, and the defendant, Northland Greyhound Lines, Inc., entered into a certain written agreement, whereby the defendant, Mulvaney Realty Company, leased to the defendant, Northland Greyhound Lines, Inc., the waiting room, ticket office, rest rooms and toilet and wash room facilities the said Mulvaney Realty Company agreeing to maintain the same in "a clean, sanitary and safe condition," and to sell tickets and handle the baggage for the said Northland Greyhound Lines, Inc., for which the Mulvaney Realty Company was to receive seven and one-half per cent of all ticket sales and express transportation charges for express shipped therefrom, which commission was to constitute complete payment for all rent and services. The agreement provided that the Mulvaney Realty Company could extend the same services to the Burlington Trailways System, Motor Transit Company and to Lowry and Griffin, but none other, except with the written consent of the said Northland Greyhound Lines.

On the date that the plaintiff received her injuries, the said Burlington Trailways System, the Motor Transit Company, and the Billings-Sheridan Line, all common carriers, were using the said depot and station facilities, which included the said toilet and wash room wherein the plaintiff was injured.

On the 21st day of December, 1939, the plaintiff and several members of her family, left Forsyth in the plaintiff's automobile for Billings. It was the intent of the plaintiff, on arrival at Billings, to make inquiry at the bus depot and facilities in the Mulvaney Building to ascertain the time of departure of a bus for the transportation of passengers from Billings to Worland, Wyoming, whither she was going to visit her son and his family, and if there was a bus leaving that afternoon, she expected to, and would have, purchased a ticket entitling her to transportation from said Billings to said Worland, where her son lived.

Plaintiff and her family arrived in Billings between two and three o'clock in the afternoon. The car was driven to the said Mulvaney Realty Company garage, the plaintiff and the other members of her family got out of the car, which was then taken in charge by one of the attendants of the Mulvaney Realty Company, and was driven by him up on the ramp in the garage where it was stored. The plaintiff, together with the other members of her family, then went into the ticket room where the plaintiff received from the attendant of the Mulvaney Realty Company, a check or storage ticket for her car.

Then the plaintiff and her party went into the said waiting room. The mother there indicated to her daughter, Mrs. Esther Stewart, that she wished to go to the wash room or toilet room. The daughter then went into the women's powder room, which was dark, and found the switch and turned on an electric light and looked into the toilet and wash room to see if there was room. Then she went back into the passenger waiting room, got her mother, and took her into the women's powder room. Both the plaintiff and her daughter then went into the combined women's toilet and wash room, which was dark inside. The

mother testified that she remembered looking for a light. The daughter had been in these facilities before, but did not have any recollection, so she testified, of turning on a switch for any light in the toilet and wash room. The mother went into compartment No. 3 and the daughter went into compartment No. 1. The mother, plaintiff, came out first, looked to see if her daughter was still in compartment No. 1, and then started to go out of the corridor in front of the toilet compartments. The corridor and the toilets are on a platform seven inches higher than the remainder of the wash room, and on leaving the corridor, the plaintiff fell on the wash room portion of the room. The plaintiff testified the floor looked on a level and that it was dark in the combined wash and toilet room and that the light from the two windows in the eastern portion of the wash and toilet room shone in her face as she walked out of the toilet portion of the room towards the riser. The darkened appearance on the riser is due to wear. The riser had not been repainted since the month of December, 1938.

The testimony of the defendants' witnesses as to the reason the toilets and corridor were seven inches higher than the remainder of the wash room, is to the effect that these toilets were put in some time after the construction of the building itself; that if the toilets were put in when the building was originally constructed, they would have been put on a level with the floor, and there would have been reinforcings around the area so that three holes could have been made without lessening the tensile strength of the floor. But where, as here, the toilets are put in after the building is constructed, the toilets are put on a platform and only one opening in the steel and concrete floor is made.

As to the lights, there is a sharp conflict in the evidence, the defendants' witnesses testifying that the powder and toilet room lights were on continually, and said rooms were kept lighted; that they were on a few minutes before the plaintiff was injured therein; that the coloring of the floors was not the same.

18

Robert Mulvaney, President of the defendant and respondent, Mulvaney Realty Company, was called as a witness for plaintiff in reference to the lights in the toilet and wash room and the powder room, and testified that they were always kept on.

There is a sharp conflict in the evidence herein as to whether the combined toilet and wash room was dark, as testified by the plaintiff, or whether the room was lighted at all times as testified by the defendants' witnesses; and as to whether the obliteration of the white stripe on the riser caused the floors to have the appearance to the eye of being on a level; and whether, if the white stripe had been kept thereon in its original condition, or substantially so, and not allowed to become obliterated, it would have indicated more plainly to the eyes of anyone coming out of the toilet, that the floors were not level, and that a step down of seven inches was there; and as to whether the windows in the partition between the combined wash and toilet room, and the passenger waiting room, were so situated that the light coming through from the passenger waiting room would shine in the eyes of a person coming out of the toilet; and as to whether the floors were of the same, or similar color, causing the floors to appear on a level, and causing the riser to be less noticeable than it would be if the floors were of a different color.

The plaintiff testified the toilet room was dark, and that ''I remember looking for a light.'' There is a conflict in the evidence as to whether the plaintiff was negligent, and failed to exercise reasonable care for her safety, in going into the toilet if the room was dark as she testified it was, and as to whether the plaintiff exercised reasonable care in looking for a light in the toilet room; or, in other words, there is a conflict in the evidence as to whether the plaintiff is guilty of contributory negligence, and if so, whether the plaintiff's contributory negligence was a proximate cause of her fall and resulting injury.

There is a conflict in the evidence whether, as defendants' claim, the plaintiff missed the step in the toilet room and fell as a result of her own act, in looking under the door marked ''S'' on Exhibit 5, at the first booth of the toilet to see whether her

daughter, Mrs. Stewart, was still in there, and in consequence of her failure to observe the riser as she stepped forward.

Where, as herein, there is a conflict in the evidence as to ▉ whether the facilities were in an unsafe condition, either from structural defects or negligent maintenance, which proximately caused the injuries complained of, or whether plaintiff is, herself, guilty of contributory negligence constituting a proximate cause of said injuries, the conflict is one to be decided by the jury.

In the case of *Goodman* v. *Queen City Lines, Inc.*, 208 N. C. 323, 180 S. E. 661, the evidence was in sharp conflict as to the sufficiency of the light and the slippery condition of the floor in the toilet, and the plaintiff was injured under conditions very similar to those shown in the evidence herein. There, the court sustained a judgment in favor of the plaintiff, and against defendant carrier as to whom plaintiff was a passenger. To the same effect is the case of *Touhy* v. *Owl Drug Co.*, 6 Cal. App. (2d) 64, 44 Pac. (2d) 405, 406, where the negligence complained of was that the stool at a soda water fountain was on a platform seven inches above the floor, the plaintiff falling when she started to get off the stool, not noticing the floor, causing injuries to herself. The court said: "That respondent was deceived by the appearance of the platform and floor into an assumption that they were on a common level, and received her injuries as a direct result thereof, appears clear and uncontrovertible. To maintain such platform and floor in that condition constituted a potential danger to ordinary humanity which might be deceived thereby into a false step with resultant injury, of which danger the proprietor must be presumed to have knowledge superior to that of a casual invitee entering his premises. Being under duty to maintain such premises in a reasonably safe condition in respect to use * * * by invitees, the owner or occupant is bound by the same duty to take into consideration all the classes and grades of such invitees as they go to make up the ordinary public which enters upon such premises."

The opinion in the case of *Long* v. *Breuner Co.*, 36 Cal. App.

20

630, 172 Pac. 1132, wherein the plaintiff was injured by slipping and falling on the rounded part of an incline, upheld the same principle. Other cases where judgments have been upheld for injuries sustained by persons slipping on floors, risers in floors, or negligence, under conditions similar to those alleged by the plaintiff herein, are: *McCartan* v. *Park Butte Theater Co.*, 103 Mont. 342, 62 Pac. (2d) 338; *Pullen* v. *City of Butte*, 45 Mont. 46, 121 Pac. 878; *Fox Tucson Theatres Corp.* v. *Lindsay*, 47 Ariz. 388, 56 Pac. (2d) 183. See also, *Brinkworth* v. *San Seelig Co.*, 51 Cal. App. 668, 197 Pac. 427; *Walsh* v. *Maurice Merc. Co.*, 20 Cal. App. (2d) 45, 66 Pac. (2d) 181; *Hechler* v. *McDonnell*, 42 Cal. App. (2d) 515, 109 Pac. (2d) 426; *Young* v. *Bates Valve Bag Corp.*, 52 Cal. App. (2d) 86, 125 Pac. (2d) 840.

In the case of *Bennetts* v. *Silver Bow Amusement Co.*, 65 Mont. 340, 357, 211 Pac. 336, 342, this court said: "The undisputed evidence is that the theater was in a darkened condition; that the plaintiff used the means given to her to avoid danger, namely, her eyes, in that she looked toward the floor, but on account of the darkened condition of the theater was unable to see the floor, and therefore unable to detect the offset or step down from the platform to the floor." In this case the negligence of the defendant was alleged to consist in the placing of chairs on a platform raised from four to eight inches above the level of the aisle in a theater, and in not warning plaintiff of that fact, and in not providing a light to enable patrons to see where they were going. This court there held that the question of the defendant's negligence was a jury question, and that therefore, a motion for a directed verdict in favor of the defendant was properly overruled. In the opinion in that case, the manner in which the plaintiff was injured is described as follows: "In stepping from the cement platform to the aisle, her heel caught on the edge of the platform, causing her to fall. In falling she broke the small bone of her left leg, about 4 inches above the ankle, and the tip of the larger bone was broken." Therein, the plaintiff sustained her injuries in the same manner

as the plaintiff herein, and the verdict of the jury for damages was sustained.

Herein there is a sharp conflict in the evidence as to whether the injuries sustained by the plaintiff were proximately caused by the failure of the defendants to exercise reasonable care to keep and maintain the said station and depot facilities in a safe condition, which is an issue of fact to be determined by the jury.

But the defendants contend that the evidence herein shows that the plaintiff is guilty of contributory negligence such as to justify a nonsuit and a directed verdict herein in favor of the defendants, in that, when plaintiff went into the toilet she stepped up over the riser, and that therefore, she is chargeable with knowledge of the alleged dangerous condition when she came out and stepped down seven inches from the corridor floor to the wash room portion of the room, and defendants in their briefs cite several cases decided by respectable courts sustaining defendants' contention, but this court has taken a different view. In the case of *Bennetts* v. *Silver Bow Amusement Co.,* supra, from which we have just quoted, the same argument was made by the defendant in attempting to obtain a reversal of a district court judgment for damages against defendant, where the fact conditions were similar to those herein, and this court said in the opinion sustaining the district court judgment: ''The jury having determined that the defendant was derelict in the performance of its duty in maintaining the step up from the aisle to the platform in an unlighted condition, the defendant cannot be heard to assert as a defense to this action its good fortune by reason of plaintiff's escape from injury when going upon the platform in question.''

Contributory negligence, unless it is to be inferred from the plaintiff's evidence, is a matter of defense to be established by a preponderance of the evidence. (*Williams* v. *Hample,* 62 Mont. 594, 205 Pac. 829.) While we are of the opinion that the plaintiff was not guilty of contributory negligence *as a matter of law* such as to require the taking of the case from the jury, we are also of the opinion that the question of whether the plain-

tiff was, as a question of fact, guilty of contributory negligence, is a jury question, and one which should be submitted to the jury.

Specification of error No. 3 alleges that the court erred in sustaining the motion to strike from the case, and particularly from the testimony and evidence appearing in the plaintiff's case in chief, all testimony bearing on the intent or purpose of the plaintiff to purchase bus transportation from Billings to Worland, Wyoming, and matters connected therewith. We think the court was in error in this regard, as the intent and purpose of the plaintiff in going upon the station and depot facilities, is very material in this case as tending to show of which carrier she intended to become a passenger.

The defendants urge that they had no notice of the alleged unsafe conditions complained of by the plaintiff. We are of the opinion there is no merit in this point. The white stripe on the riser had been obliterated for a considerable period of time before the plaintiff was injured, by wear and tear, and in fact, had not been repainted since the month of December, 1938. The platform was constructed a considerable time before the injury to plaintiff, and the two windows through which plaintiff claims the light came which it is alleged shone in the eyes of the plaintiff as she came out of the toilet to the step down, were constructed when the facilities were built some time before.

As to the electric light in the wash and toilet room, the defense is that this light was on just a few moments before the plaintiff was injured, and was on within a few minutes after the plaintiff was injured. These facts do not bring this case within the rule laid down in *Doran* v. *United States Bldg. & Loan Ass'n.*, 94 Mont. 73, 20 Pac. (2d) 835, for therein the mechanical defect complained of actually existed. The defendants herein do not admit that the electric light was defective, but their defense is that the same was lighted all of the time. The evidence of the plaintiff is that the other negligent conditions complained of had been in existence for a considerable period of time before the plaintiff was injured.

In order to recover, there must exist a failure to perform an ▇ act imposed by law against the party charged. (*Conway* v. *Monidah Trust*, 47 Mont. 269, 132 Pac. 26, L. R. A. 1915E, 500.)

It is necessary now to determine just what legal duty, if any, was owed by these defendants, or either of them to the plaintiff Isabelle Ahlquist, herein.

The defendants claim that the plaintiff, as to them, was not ▇ an invitee in or upon said premises, and therefore, these defendants owed her no legal duty except to refrain from acts of willful or wanton negligence against her, and the defendants are correct in this statement of the law, if plaintiff was not an invitee upon said premises. (*Montague* v. *Hanson*, 38 Mont. 376, 99 Pac. 1063.) On the other hand, the plaintiff claims she was an invitee on these premises as to each of these defendants, and that each of these defendants owed her the duty to exercise reasonable care to keep and maintain said premises in a safe condition, and in this statement of the law the plaintiff is correct, if she was an invitee.

The authorities are quite uniform in holding that a common carrier, as to invitees, must keep its station facilities and platforms and cars so lighted as to enable invitees therein to avoid danger, and when it may be reasonably assumed that the necessities of the invitees may require lights, a failure to furnish them is negligence. (*Valentine* v. *Northern Pac. Ry. Co.*, 70 Wash. 95, 126 Pac. 99; *Harris* v. *Seattle, R. & S. Co.*, 65 Wash. 27, 117 Pac. 601. See other cases cited under "Carriers" See 286(7), Vol. 7 Mont. & Pac. Dig. p. 738; 13 C. J. S., Carriers, sec. 718, p. 1340. And negligence has been defined by this court in the case of *Zanos* v. *Great Nor. Ry. Co.*, 60 Mont. 17, 198 Pac. 138, 140, as follows: "Negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such person under the existing circumstances would not have done.

Vol. 10, Am. Jur., sec. 1281, p. 188, states the law in this regard as follows: "A common carrier of passengers is under a duty to provide adequate station accommodations and proper

safeguards at those places where it takes on and puts off passengers, and to keep its stations in a safe condition; its failure to perform its duty in this respect will render it liable to those who enter upon the premises, in response to an implied invitation, and suffer injury as a result of such neglect.''

The degree of care required of a common carrier in reference to the safe condition of its depot and station facilities, is stated in vol. 13 C. J. S., Carriers, sec. 713, p. 1326, as follows: ''The care required of a carrier in keeping its premises safe for passengers is commonly held to be only reasonable or ordinary care. Its duty to keep the premises safe extends only to those parts thereof to which the public and passengers naturally resort or have been invited, and to which they necessarily or ordinarily go in boarding or leaving trains, and not to places to which they have no occasion to go, or beyond the station grounds. It has been said that the carrier's liability to passengers, with respect to the condition of its premises, is the same as that of any owner or occupant of premises to persons who by invitation or inducement come there to transact business.'' The same rule is set forth in 5 Amer. & Eng. Enc. of Law, 532, Note 3; 10 Am. Jur., sec. 1282, p. 189.

The issue of law for the court to determine upon this appeal thus narrows down to one question, viz: Whether the plaintiff was, at the time she was injured, an invitee as to these defendants upon the station and depot facilities.

We will first investigate the legal question of whether the plaintiff was, at the time of her injury, an invitee as to the defendant carrier, Northland Greyhound Lines.

The plaintiff alleges she was an invitee. The defendants claim plaintiff was a licensee. The definition used by many judges in reported cases, distinguishing between an invitee and a licensee or trespasser is: ''The principle appears to be that invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mere pleasure or benefit of the person using it.'' (Camp. Negligence, sec. 33; *Dowd* v. *Chicago, M. & St. P. Ry. Co.*, 84 Wis.

105, 54 N. W. 24, 26, 20 L. R. A. 527, 36 Am. St. Rep. 917; *Midland Valley R. Co.* v. *Littlejohn,* 44 Okl. 8, 143 Pac. 1.) And this definition has been adopted by this court in the case of *Jonosky* v. *Northern Pac. Ry. Co.,* 57 Mont. 63, 187 Pac. 1014, 1015, wherein this court defined the term ''invitation'' as follows: ''An invitation is inferred where there is a common interest or mutual advantage, while a license is implied where the object is the mere pleasure, convenience, or benefit of the person enjoying the privilege. (*Bennett* v. [*Louisville & N.*] *R. Co.,* 102 U. S. 577, 584, 26 L. Ed. 235; [See also, Rose's U. S. Notes.] 2 White on Personal Injuries on Railroads, sec. 870.) The Supreme Court of Massachusetts has stated the rule as follows: 'To come under an implied invitation as distinguished from a mere license, the visitor must come for a purpose connected with the business in which the occupant is engaged or which he permits to be carried on there. There must at least be some mutuality of interest in the subject to which the visitor's business relates, although the particular thing which is the object of the visit may not be for the benefit of the occupant.' (*Plummer* v. *Dill,* 156 Mass. 426, 32 Am. St. Rep. 463, 31 N. E. 128; *Wright* v. *Boston & A. R. R.,* 142 Mass. [296], 300, 7 N. E. 866; Elliott on Railroads, sec. 1249; 1 Thompson on Negligence, sec. 987; 17 R. C. L. 566; 29 Cyc. 455.) The same distinction is made by the English courts. (*Holmes* v. [*Northeastern*] *Ry. Co.* [L. R.] 4 Exch. 254).''

The law is quite well settled by the authorities and decided cases, that one who intends to become a passenger upon a carrier's passenger bus or passenger train, and enters the station or depot facilities for that purpose, is a passenger or an intended passenger of that carrier, and such carrier owes to him the duty to exercise reasonable care to keep and maintain the station and depot facilities in a safe condition.

In 10 C. J., p. 613, the rule is stated as follows: ''Where one with the bona fide intention of becoming a passenger, and with the express or implied assent of the carrier, goes on the carrier's premises, into the station, ticket office or waiting room, at a

time when such place is open for the reception of passengers intending to take passage, even though, without the passenger's knowledge, it has been opened without authority, or goes from the ticket office or waiting room on to the platform or other proper part of the premises to take a seat in a car, he ordinarily places himself in the position of a passenger, although he has not purchased a ticket, or the agent has refused to sell him a ticket." (See also 13 C. J. S., Carriers, sec. 556.)

In the case of *Palmer* v. *Willamette Valley So. Ry. Co.,* 88 Or. 322, 171 Pac. 1169, 1171, L. R. A. 1918D, 1114, the court said: "Stating the rule in general terms, it may be said that a person places himself in the position of an intending passenger when he enters upon a carrier's premises with the bona fide intention of becoming a passenger, and awaits the arrival of his train at a proper place, in a proper manner, and within a reasonable time, before the arrival of such train. (*DuBose* v. *Atlantic Coast Line R. R. Co.,* 81 S. C. 271, 62 S. E. 255; *Abbott* v. [*Oregon*] *Railroad Co.,* 46 Or. 549, 561, 80 Pac. 1012, 1 L. R. A. (n. s.), 851, 114 Am. St. Rep. 885, 7 Ann. Cas. 961; 10 C. J. 613.) It may be assumed, therefore, that the plaintiff acquired the rights of an intending passenger when he went to the depot for the purpose of taking the train to Ogle." This rule is supported by the following authorities: *Messenger* v. *Valley City St. & Int. Ry. Co.,* 21 N. D. 82, 128 N. W. 1023, 32 L. R. A. (n. s.), 881; *Karr* v. *Milwaukee Light, Heat & Traction Co.,* 132 Wis. 662, 113 N. W. 62, 13 L. R. A. (n. s.), 283, 122 Am. St. Rep. 1017; *Kuhlen* v. *Boston & Nor. Ry. Co.,* 193 Mass. 341, 79 N. E. 815, 7 L. R. A. (n. s.), 729, 118 Am. St. Rep. 516; *Chicago, R. I. & P. R. Co.* v. *Stepp,* 164 Fed. 785, 90 C. C. A. 431, 22 L. R. A. (n. s.), 351; *Metcalf* v. *Yazoo & Miss. Valley Ry. Co.,* 97 Miss. 455, 52 So. 355, 28 L. R. A. (n. s.), 311; *O'Brien* v. *Rutland R. Co.,* 243 App. Div. 833, 278 N. Y. Supp. 8.)

The plaintiff went upon these station and depot facilities that afternoon for the purpose of ascertaining if there was any bus transportation from Billings to Worland, Wyoming, and for the purpose of purchasing a ticket entitling her to trans-

portation from Billings to Worland, and as the Burlington Trailways operated a passenger bus service from Billings to Worland, the plaintiff would have been given a time table of the Burlington Trailways and would have purchased a ticket from, and become a passenger of, the Burlington Trailways, and we are of the opinion that the plaintiff that afternoon entered these premises, and depot facilities, "for a purpose connected with the business" of the Burlington Trailways, as that term has been applied and defined by this court heretofore in the case of *Jonosky* v. *Northern Pac. Ry. Co.*, supra (*Hickman* v. *First Nat. Bank*, 112 Mont. 398, 117 Pac. (2d) 275); and under all of the facts herein, as a conclusion of law, we are of the opinion that the plaintiff was an invitee of the Burlington Trailways, but not of the Northland Greyhound Lines.

The next question in sequence is whether the defendant, Northland Greyhound Lines, owed any duty to the plaintiff, Ahlquist, she being an intended passenger and invitee of the said carrier, Burlington Trailways, using the same station and depot facilities.

The prevailing rule is that the liability of each carrier under such circumstances is limited to its own particular passengers or intended passengers, upon the ground that it owes no legal duty to passengers or intended passengers of the other carriers. (*Louisville, N. A. & C. Ry. Co.* v. *Treadway*, 142 Ind. 475, 143 N. E. 689, 40 N. E. 807, 41 N. E. 794; *Goodman* v. *Queen City Lines*, 208 N. C. 323, 180 S. E. 661; *Searcy* v. *Interurban Transp. Co.*, 189 La. 183, 179 So. 75; *Manatis* v. *Cumberland & M. R. Co.*, 222 Ky. 190, 300 S. W. 593, 595.)

Under certain conditions which do not here obtain, liability has been imposed upon carriers as to passengers or intended passengers of other carriers. (10 C. J. 882, sec. 1319; 13 C. J. S., Carriers, p. 1321, sec. 708; 10 Am. Jur. 31, sec. 960; *Louisville & N. R. Co.* v. *Clark*, 205 Ala. 152, 87 So. 676, 677, 14 A. L. R. 695; *Chicago, R. I. & P. R. Co.* v. *Stepp*, supra; *Scott* v. *Cincinnati, N. O. & T. P. Ry. Co.*, 181 Ky. 128, 203 S. W. 1064; *Williams* v. *Southern Ry. Co.*, 102 Miss. 617, 59 So. 850; *Lucas*

28

v. *Pennsylvania Co.,* 120 Ind. 205, 21 N. E. 972, 16 Am. St. Rep. 323; *Hart* v. *King Co.,* 104 Wash. 485, 177 Pac. 344; *Boyle* v. *Waters,* 199 Mich. 478, 166 N. W. 114; *Brecher* v. *Chicago Junction Ry. Co.,* 119 Ill. App. 554; 10 C. J. 879, secs. 1315, 1316, 1317; 13 C. J. S., Carriers, secs. 705, 706, 707; 33 C. Y. C. 710, sec. 5; 22 R. C. L., sec. 3116, p. 1083; *Calder* v. *Southern Ry. Co.,* 89 S. C. 287, 71 S. E. 841, Ann. Cas. 1913A, 894; *Kansas City So. Ry. Co.* v. *Watson,* 102 Ark. 499, 144 S. W. 922; *Jenkins* v. *Northern Pac. Ry. Co.,* 44 Mont. 295, 119 Pac. 794; *Bennett* v. *Louisville & Nashville Ry. Co.,* 12 Otto 577, 102 U. S. 577, 26 L. Ed. 235).

Counsel for plaintiff cites the cases of *Tschumy* v. *Brook's Market,* 140 Pac. (2d) 431, decided by the Court of Appeal of the State of California, and the case of *Jordan* v. *New York N. H. & H. R. Co.,* 165 Mass. 346, 43 N. E. 111, 32 L. R. A. 101, 52 Am. St. Rep. 522, as authority for holding that the defendant, Northland Greyhound Lines herein, owed a duty to plaintiff, the breach of which imposed liability, but an examination of these cases discloses that these cases are distinguishable from the facts in the case before us for decision, in that in the California case, the plaintiff who was injured was a customer of the defendant, having just made a purchase of the defendant on whose premises she was injured; in the Massachusetts case, the plaintiff was a passenger of the defendant railroad on whose premises she was injured.

After a careful review of all the authorities and cases cited, and independent investigation of our own, we are of the opinion that the evidence tends to show that the plaintiff was, when injured, an intended passenger of the carrier, Burlington Trailways, as this carrier operated passenger bus service from Billings to Worland, Wyoming, whither the plaintiff intended to go that afternoon. In fact this defendant did not operate any bus passenger service from Billings to said Worland, whither this plaintiff intended to go when she entered the station facilities.

Herein, the defendant, Northland Greyhound Lines, was not

the owner of the premises. This defendant did not occupy the position of lessor as to the other carriers. There was no contractual agreement or relationship of any kind, express or implied, as between the Northland Greyhound Lines and the other carriers. This defendant entered into no agreement with the other carriers as to joint use of these premises, and this defendant did not act as agent for the other carriers in the sale of tickets, or in the supplying of information as to transportation facilities so as to, itself, invite prospective passengers of the other lines to enter upon said premises, and the other carriers did not act in any way for this defendant. In other words, the Northland Greyhound Lines was not an agent for, in any way, either of the other carriers, and the other carriers were not agents for, in any way, the defendant, Northland Greyhound Lines. These station and depot premises, so the evidence shows, are owned by the defendant, Mulvaney Realty Company, by whom their use is separately contracted to the defendant, Northland Greyhound Lines, the Burlington Trailways and the other carriers. The defendant, Northland Greyhound Lines, derives no profit from tickets sold for the other carriers, and neither do the other carriers derive any profit from tickets sold by the defendant, Northland Greyhound Lines. The evidence herein fails to show any privity of interest, right or relationship as between the defendant, Northland Greyhound Lines, and the other carriers, either in the establishment or the operation of these station and depot facilities. We have not been able to find any legal principle announced by the courts, or any statute, which, under the factual conditions herein, establishes any liability of this defendant to the plaintiff, and we do not believe this court has any jurisdiction, by judicial interpretation, to create any.

We are of the opinion that the district judge was correct when he said at the time he granted the motion for non-suit: "Simply stated, this means I found from the evidence, that, as a matter of law, the plaintiff sued the wrong person when she sued the Northland Greyhound Lines. As a matter of law, she should

30

have sued the Burlington, assuming, of course, she had a case.''

What duty did the Mulvaney Realty Company owe to the plaintiff when she left the garage portion of the building, and entered upon that portion leased to the several bus companies operating as common carriers of passengers for hire?

As this defendant agreed in the lease agreement with the Northland Greyhound Lines, to maintain the said facilities in a clean, sanitary and safe condition, the Mulvaney Realty Company cannot disclaim *scienter* of what these premises were being used for, because the terms of the lease are clear and indicative that the premises (leased) were to be used as facilities of the several common carriers, and said facilities had been so used for several months immediately prior to the time plaintiff was injured, and were so used on the day plaintiff was injured therein. (Sec. 7968, subd. 3, 3 C. J. S., Agency p. 129, sec. 220.) The defendant, Mulvaney Realty Company, having leased said facilities, knowing the same were to be used for a public as distinguished from a private, purpose, and having agreed to mainatin said facilities in a safe condition, and the planitiff being rightfully upon said premises as an intended passenger of said Burlington Trailways, the Mulvaney Realty Company owed to plaintiff the legal duty to exercise reasonable care for her safety, and maintain and keep said premises and facilities in a reasonably safe condition. (36 C. J. 225, sec. 915; *Fitzsimmons* v. *Hale*, 220 Mass. 461, 107 N. E. 929; *Stratton* v. *Staples*, 59 Me. 94; *Readman* v. *Conway*, 126 Mass. 374; *Nash* v. *Minneapolis Mill. Co.*, 24 Minn. 501, 31 Am. Rep. 349; *Washington Market Co.* v. *Clagett*, 19 App. D. C. 12; and cases cited on pages 1125-1129, L. R. A. 1916F.

Appellant contends that this Court has no jurisdiction to consider the evidence for the reason that the record does not include the affidavit upon which was based the last extension of time for presentation of the bill of exceptions. However the court minutes included in the judgment roll show that the order in question was based ''on the affidavit of Thomas C. Colton and for good cause shown.'' The same objection was raised in

*Atlantic-Pacific Oil Co.* v. *Gas Development Co.*, 105 Mont. 1, 69 Pac. (2d) 750, 753, and this Court said: "Here the order discloses that an affidavit was filed on which the trial court based its order. The order showing that it was based on an affidavit was sufficient to cause the presumption to arise that the court had jurisdiction; in other words, it will be presumed, in the absence of a showing to the contrary, that the affidavit was sufficient to invoke the discretion of the trial court." The court then proceeded to distinguish that case from *O'Donnell* v. *City of Butte*, 72 Mont. 449, 235 Pac. 707, in which the record did not show that any affidavit had been furnished.

There are other specifications of error, but upon examination we find that none of them is well founded.

We are of the opinion the district court should have denied the motion for a directed verdict as to the Mulvaney Realty Company.

It is ordered that the judgment of the district court dismissing the action as to the defendant, Northland Greyhound Lines, be sustained, and that the judgment dismissing the action as to the Mulvaney Realty Company be reversed, and the cause remanded to the district court.

MR. CHIEF JUSTICE JOHNSON, ASSOCIATE JUSTICES ANDERSON and ADAIR, and HONORABLE C. B. ELWELL, District Judge, sitting in place of MR. JUSTICE ERICKSON, disqualified, concur.

Rehearing denied October 10, 1944.